## MILES v. BRIGGS et al. (No. 8226.)

Court of Civil Appeals of Texas. San Antonio. May 15, 1929.

Rehearing Denied July 3, 1929.

Wells & Richards, of Brownsville, for appellant.

Seabury, George & Taylor, of Brownsville, for appellee.

COBBS, J. Appellant brought this suit against appellees to recover commissions due under certain written contracts entered into between appellant and appellees, through appellees' duly authorized agent, one C. F. C. Ladd, arising out of certain contracts for the

sale of land belonging to appellees to purchasers secured by appellant. These contracts for sale of appellees' land were alleged to have been subsequently canceled by the purchasers on account of the failure of appellees to comply with certain obligations and conditions to be performed by appellees for the benefit of purchasers. Appellant alleged that this failure on the part of appellees was due to no fault of his, and asked for judgment against the appellees for the commissions due him under his contract, had the purchasers not canceled them on account of appellees' failure to perform the stipulated obligations.

The appellees sought to defend the recovery upon the ground that C. F. C. Ladd had no right or authority to employ appellant, so as to bind or obligate appellees to pay him a commission, and raised the further question as to whether Ladd was in fact the agent of appellees and authorized to represent them in any way. The case was tried with a jury, and the court, after hearing the evidence, instructed a verdict in favor of appellees.

Without giving any thought or considering the case with reference to parties, it occurs to us that Charles F. C. Ladd should have been a party to this suit; but, as neither party pays any attention to that question, we pass it by.

From the testimony in this case it will be seen there were two valid contracts, which must be construed together, one designated as the "Ladd contract," and the other the "Zumbrunn contract." By the terms of these contracts it is contended by appellant that Ladd was employed by appellees to act as their general agent. Appellee owned certain very valuable lands in Cameron county, which he was desirous of improving and placing upon the market for sale, but he was lacking in money to make the necessary improvements. The "Zumbrunn contract" was entered into, among other things, to secure the necessary money and means to place the lands upon the market under an irrigation system, and construct ditches and canals thereon, and it provided for the advancement of certain sums from time to time for necessary expenses for the conduct of the sales campaign by Ladd. Zumbrunn was to lend appellees certain sums of money, from time to time, for the purposes set forth, and was to receive as security for these loans or advancements the title to the lands of appellees, as well as all moneys, notes, and other considerations which might be received by appellees through Ladd, arising out of the sale of appellees' lands. For his compensation for acting as banker, or mortgagor, Zumbrunn was to receive a certain interest upon the daily balances owing him, as well as other additional compensation.

These two documents or contracts are interdependent each upon the other, and must be construed as but one contract. It was the contention of appellees that under the terms of the Ladd contract it did not create an agency or contract of brokerage, but created him an independent contractor, without power or authority to bind appellees in any way, by reason of the following language in the contract, to wit: "Second party undertakes to sell the lands affected hereby through agencies created by him, and in the sale of said lands, the method of sale, the supervision and control of the agents and agency force and the conduct of said business shall be confined to and remain exclusively in second party, save as may be otherwise herein noted."

It is a well-settled rule of law in this state that a contract must be construed, not with reference to one section, but each and every part must be construed together as a whole. It is apparent that appellees knew nothing about the conduct of and the colonization of large bodies of land, so it was that Ladd, upon his insistence, was to have the exclusive control of his large sales force, and that there should be no interference with the agencies created by him in carrying out the policies he had adopted. Ladd controlled a large agency force. The very terms of the contract provide: "Second party shall conduct the business in the name of R. J. Coleman, and all contracts for sale of said lands or portions thereof shall be taken in the name of R. J. Coleman, and all earnest money and notes shall be payable to him." No conveyance by Ladd or any other person, except appellees, was contemplated. So the business was to be conducted in the name of appellees, and all contracts taken in their name, and the consideration paid to them.

The contract likewise provided that appellees were to extend all irrigation facilities and do all things in behalf of the purchasers. And appellees were to finance the expenses necessarily incurred by Ladd in the sale of the lands, and all moneys received by him were to be paid to Zumbrunn, the trustee, and not to be retained by Ladd. The contract further provided that the necessary expenses incurred by Ladd should be limited, and that whatever sum should be saved from the necessary expenses under 50 per cent. of the gross selling price should be paid to Ladd as additional compensation.

The contract plainly provides for a commission to be paid to Ladd for the sale of appellees' lands, and provides when and how the same shall be paid, and in what form, and his compensation was subject to certain restrictions in case of forfeitures. The contract clearly indicates that Ladd was the agent of appellees, and not an independent contractor, for it provides that appellees, at their discretion and in their judgment, may, upon 15 days' written notice, terminate the contract and discharge Ladd. If he had been an independent contractor, Ladd could not

have been discharged or removed, except for breach of the contract by him.

The Zumbrunn contract provides that he was to loan appellees $100,000, to be applied to the construction of an irrigation system upon the lands to be sold by Mr. Ladd, to build roadways, etc., and provides that Mr. Zumbrunn shall advance to Mr. Ladd such sums as Mr. R. J. Coleman may direct in writing, and that Mr. Zumbrunn is secured by appellees deeding all of the land to him, and all of the considerations for the sale of the lands through Mr. Ladd's agency were to be remitted to him, whether it was cash, notes, or other choses in action, which was to be applied, first, to reducing the loan; and, second, to be used as additional security to the loan. When Ladd delivered to Zumbrunn the consideration of the sales of the lands, the contract provided that he should make a written report, and that "Zumbrunn may pay to Mr. Ladd Mr. Ladd's 10 'per cent. commission to be paid in cash, but in the division of notes the division thereof shall be had and occur at times when first parties are represented in person or by their authorized representatives."

We do not see how Ladd may be designated an independent contractor, when all the testimony and the contracts show him to be an agent or broker. C. O. Miles, a witness for appellant, testified:

"The circumstances leading up to the signing of this contract were: I was in a little different position than the other agents who were selling land, as I was able to finance myself. This matter was discussed and this contract agreed on at the same time Mr. Ladd made his contract at Waxahachie. I refer to the contract Mr. Ladd had with Mr. Coleman and others interested in this land. I was present at Waxahachie at the time that contract was executed. There was present at that time W. F. Zumbrunn, Charles F. C. Ladd, and R. J. Coleman, and others interested in the land. There was a discussion at that conference with others besides R. J. Coleman with reference to me entering into the contract with the Briggs-Coleman holdings with reference to acting as their agent. It was generally discussed before any number of them, and my compensation was discussed at that time, and was agreed upon, and that contract which I have just identified was the written result of those negotiations at that

time. After I entered into that contract, from that time on I solicited purchasers for the sale of defendant's lands, and made various sales under that contract. I would say that I made approximately from 50 to 100 sales under that contract, and most of those transactions were consummated between the purchasers and defendants, and I received my compensation on the transactions that were closed. * * * I know from my own knowledge that Hancock, Jacobs, and Young were able to go through with and fulfill the terms of their sales contracts. I made investigation as to their financial worth myself. These people were able to go through with those purchases, had they wished to do so."

■ Appellant secured purchasers that were ready, able, and willing to buy lands offered for sale, and they contracted for the purchase of said land with appellees, but appellees failed to comply with the paragraph of the contract of sale with reference to placing the land purchased within the water improvement district, and to construct canals thereon. For that reason the purchasers declared the contract null and void, and demanded the return of the money which had been paid. The purchasers no doubt would have performed their contract of purchase, had it not been for the default and failure of appellees to comply with one of the vital provisions of the contract, and such failure on the part of appellees was in no way caused by the acts or conduct of appellant.

■ Now, again, appellees knew that Ladd had been acting in their behalf as their agent or broker, and having received the benefits of his efforts in their behalf, and with full knowledge of all the facts, are estopped to deny their liability to him as their agent, for they cannot be permitted to reap the fruits of his labors and deny any liability to pay him the commissions he has earned in procuring the purchasers and making the sale. The Ladd-Coleman and Ladd-Zumbrunn contracts must be construed as agency or brokerage contracts, authorizing Ladd to enter into the contract between appellees and appellant, so as to bind appellees to pay to appellant the commissions which appellant has earned, and to which he is entitled.

For the errors committed in the trial of this case, and herein discussed, the judgment of the trial court is reversed, and the cause remanded for another trial.