PACIFIC MUTUAL LIFE INSURANCE COMPANY et al., Appellants,

v.

WESTGLEN PARK, Inc., Appellee.

No. 7050.

Court of Civil Appeals of Texas.

Texarkana.

May 27, 1958.

Rehearing Denied June 17, 1958.

W. P. Maddox six lots, to-wit, Lots 7 and 8 in Block 3/7295 of Westglen Park Addition No. 1, and Lots 23, 24, 25 and 26 in Block 3/7295 of Westglen Park Addition No. 2, to the City of Dallas, in Dallas County, Texas. The consideration recited in the deed was (a) $10.00; (b) the sum of $7,500 cash which Casa Linda State Bank paid to Westglen; and (c) a note of $9,600 executed by Maddox to Westglen secured by a vendor's lien and deed of trust lien. A note evidencing the $7,500 advanced by the bank was also secured by a first and superior vendor's lien, as well as a deed of trust lien. Such deed also contained the following quoted provision:

"The holder of the $9600.00 note above described agrees to subordinate the lien to construction loans to be created by the grantee herein in an amount not exceeding $14,000.00 per lot."

Westglen's note of $9,600 recited that it was secured by a second and inferior vendor's lien retained in the mentioned deed of even date and was further secured by a deed of trust of even date. Such deed of trust contained a special provision reading as follows:

"It is agreed and understood that upon the payment of $1600.00 upon the principal of said note, together with accrued interest on said amount to the date of such payment, the owner and holder of said note will release the lien hereof in so far as the same covers any one of the above described lots."

Westglen and Maddox on October 17, 1955, entered into a written contract from which we quote as follows:

C. C. Renfro, Dallas, for appellants.

John A. Rawlins, Dallas, for appellee.

FANNING, Justice.

By warranty deed dated October 17, 1955, Westglen Park, Inc., conveyed to

"State of Texas }
County of Dallas }  Know All Men by These Presents:

"That Whereas, Westglen Park, Inc. Party of the First Part, has this day conveyed to W. P. Maddox, Party of the Second Part, both of Dallas Coun-

ty, Texas, the following described property:"

(Here follows same description of lots as shown in the deed above referred to.)

"This Agreement concerning said lots is entered into between the parties involved and shall be binding upon themselves, their heirs or assigns:

"1. Westglen Park Inc. has first option to repurchase, at the original sale price, any of the above lots if said W. P. Maddox does not build on said lot or lots, but offers them for sale.

"2. Construction of houses on said lots shall be as follows:

"a. 1st house to be begun within 60 days from date hereof.

"b. 2nd house to be begun within 120 days from date hereof.

"c. 3rd house to be begun within 180 days from date hereof.

"d. 4th house to be begun within 240 days from date hereof.

"e. 5th house to be begun within 300 days from date hereof.

"f. 6th house to be begun within 360 days from date hereof.

"3. All house plans shall be submitted to Westglen Park, Inc. for approval as per restrictions.

"4. Westglen Park Inc. agrees to subordinate to the amount of the construction loan of the houses on said lots. At the time the construction loan is acquired then a subordination agreement shall be drawn up setting out the amount of the construction loan.

"5. Lots or lot must be cleared before the house is sold or occupied or title changes out of W. P. Maddox.

"Witness our hands this 17th day of October, 1955.

"Westglen Park, Inc.
By /s/ Robert H. West
———————————————
President
"Party of the First Part.
"/s/ W. P. Maddox
———————————————
"Party of the Second Part."

(Here follow statutory acknowledgments.)

The record shows that Maddox commenced the first house on Lot 26, completed it, and that partial releases from the bank and Westglen were executed in accordance with the terms of the original agreement with a deviation by which Westglen released its lien without full payment of $1,600 for the lot. In this connection, Westglen agreed, as stated in a written memorandum, quoting in part therefrom as follows:

"The releases on the remainder of the lots will be furnished in accordance with the schedule set out below.

| "Lot 7, Block 3/7295 | Due | $1300.00 |
| "Lot 8, Block 3/7295 | Due | 1500.00 |
| "Lot 23, Block 3/7295 | Due | 2097.44 |
| "Lot 24, Block 3/7295 | Due | 2097.44 |
| "Lot 25, Block 3/7295 | Due | 2097.44" |

Maddox commenced a house on Lot 25. In order to finance the construction of this house, he negotiated a loan from Pacific Mutual Life Insurance Company in the amount of $14,000. This loan was evidenced by Maddox's application for the loan, construction agreement, the note, and a deed of trust. The date of execution of these instruments was November 28, 1955, which date was subsequent to the due recordation of the deed and deed of trust hereinbefore mentioned.

The agreement Maddox made with Pacific for advancement of funds to build the house on the lot here involved (Lot 25) provided that Maddox should build a house costing "not less than $16,000 in accordance with the plans, specifications—all F.H.A.

428

requirements and all applicable restrictions and building or zoning laws, ordinances or regulations" and other stated conditions. Pacific was to make advances on the $14,000 construction loan in a certain stated manner as outlined in its agreement with Maddox. National Title & Abstract Company executed a written commitment to Pacific wherein it agreed to furnish Pacific a Title Insurance Policy. Mr. Dunlap of the Title Company testified that he would not have furnished the Title Binder if he had then known that Mr. West (President of Westglen) and Westglen Park, Inc. would not have executed a subordination of Westglen's note to the new note that Pacific was taking in connection with furnishing funds to build the house on Lot 25.

National Title & Abstract Company prepared a written subordination agreement for Westglen to execute in favor of Pacific with respect to Pacific's loan to Maddox on said Lot 25 but never presented said written subordination agreement to Westglen and put said instrument in its files. Westglen never executed any written subordination agreement with respect to Pacific's loan to Maddox.

Maddox failed to complete the house on said Lot 25 and Pacific commenced foreclosure under its deed of trust; whereupon Westglen filed suit on September 1, 1956, asserting its note was secured by a superior lien and sought to prevent Pacific from completing its foreclosure. On September 21, 1956, Westglen, Pacific and National (as intervener) made a stipulation in open court which was made the basis of an interlocutory judgment, where it was agreed that the lot involved (Lot 25) would be released from the claims of Westglen and that National would deposit $2,500 in the registry of the court and that the restraining order against the foreclosure would be set aside and that the contest would be over the $2,500 rather than the lot. At the conclusion of the trial, Westglen filed a motion for instructed verdict and National and Pacific filed a joint motion for instructed verdict. Pacific also filed a

separate motion for instructed verdict based upon the interlocutory judgment. The trial court sustained Westglen's motion to the extent of directing the jury to return a verdict for $1,600, plus interest and attorney's fees as provided by the note designated as Plaintiff's Exhibit No. 2 and the interlocutory judgment.

In the final judgment Westglen was awarded a recovery of $10,183.06, with certain interest and costs, against Maddox, with a foreclosure of its vendor's and deed of trust liens against said Lots 7, 8, 23 and 24, etc., and was also awarded judgment against Pacific and National for $2,037.92 out of the $2,500 fund deposited, plus interest and costs, etc. Maddox has not appealed from the judgment rendered against him. Pacific and National have appealed.

We have reached the conclusion that there is one decisive and controlling matter in this case which requires the affirmance of the judgment of the trial court.

We hold that the two writings with reference to subordination executed by Westglen, hereinbefore quoted, taken together and separately, constituted nothing more than an agreement to make a future contract or contracts, without specifying all of the material and essential terms of the future proposed contract or contracts of subordination and are therefore nugatory and unenforceable. See Radford v. McNeny, Tex.Com.App., 129 Tex. 568, 104 S.W.2d 472, 474, wherein it is stated:

"The general rule is: '* * * unless an agreement to make a future contract be definite and certain upon all the subjects to be embraced, it is nugatory. * * * "So, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations."' "

That judgment of the trial court is affirmed.