# PACIFIC MUTUAL LIFE INSURANCE COMPANY ET AL V. WESTGLEN PARK, INCORPORATED.

No. A-6955. Decided May 13, 1959.
Rehearing overruled July 8, 1959.
(325 S.W. 2d Series 113)

*C. C. Renfro,* of Dallas, for petitioners.

*G. H. Kelsoe, Jr.,* of Dallas, for respondents.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

This is a suit to foreclose a vendor's lien and to enjoin the enforcement of a lien, allegedly junior to the vendor's lien, arising as a result of a construction loan. Westglen Park, Inc., respondent herein, instituted this action in the district court of Dallas County against W. P. Maddox, the vendee, and Pacific Mutual Life Insurance Company, the holder of the construction loan lien. Westglen alleged that it had sold six lots to Maddox, that Maddox had, as consideration for the property, executed certain promissory notes, and that Maddox had defaulted in payment; as security, Westglen had retained a vendor's lien and a deed of trust lien, upon which foreclosure was sought.

Prior to the trial of the cause, to prevent the property in question from being tied up pending trial, by agreement an interlocutory judgment was entered wherein National Title deposited $2,500 in the registry of the court, and such deposit was substituted for the lot in question, and the liens involved therein attached to the $2,500 in lieu of the lot.

The trial court instructed a verdict for plaintiff and entered judgment in favor of Westglen foreclosing the vendor's lien and establishing its superiority to the construction loan lien. Pacific Mutual and National Title appealed to the Court of Civil Appeals, where the judgment of the trial court was affirmed. 314 S.W. 2d 425.

These are the relevant facts: On October 17, 1955, Westglen conveyed to Maddox by warranty deed six lots in Dallas County. The recited consideration was (a) $10.00, (b) $7,500.00 paid to Westglen by the Casa Linda State Bank in Dallas, and (c) Maddox' note in the amount of $9,600.00, payable to Westglen and secured by a vendor's lien and deed of trust lien. Following the recitations of consideration in the deed was this provision:

"(The holder of the $9,600.00 note above described agrees to subordinate the lien to construction loans to be created by the Grantee herein in an amount not exceeding $14,000.00 per lot.)"

Subsequent to the execution of the warranty deed, but on the same day, Maddox and Westglen entered into an agreement concerning the lots and the houses to be built thereon by Maddox; the operative contractual provisions of this agreement are as follows:

"This Agreement concerning said lots is entered into between the parties involved and shall be binding upon themselves, their heirs or assigns:

"1.  Westglen Park Inc. has first option to re-purchase, at the original sale price, any of the above lots if said W. P. Maddox does not build on said lot or lots, but offers them for sale.

"2.  Construction of houses on said lots shall be as follows:

a.  1st house to be begun within 60 days from date hereof.

b.  2nd house to be begun within 120 days from date hereof.

c.  3rd house to be begun within 180 days from date hereof.

d.  4th house to be begun within 240 days from date hereof.

e.  5th house to be begun within 300 days from date hereof.

f.  6th house to be begun within 360 days from date hereof.

"3.  All house plans shall be submitted to Westglen Park Inc. for approval as per restrictions.

"4.  Westglen Park Inc. agrees to subordinate to the amount of the construction loan of the houses on said lots. At the time the construction loan is acquired then a subordinate agreement shall be drawn up setting out the amount of the construction loan.

"5.  Lots or lot must be cleared before the house is sold or occupied or title changes out of W. P. Maddox."

On November 10, 1955, W. P. Maddox made application to the Pacific Mutual Life Insurance Company, one of the peti-

tioners here, for a construction loan in the amount of $14,000 to build a six-room brick veneer residence with two-car garage and covered garden room on Lot 25, this being one of the lots conveyed by Westglen to Maddox in the above-mentioned deed of October 17, 1955. On November 28, 1955, W. P. Maddox and Pacific Mutual entered into a construction agreement whereby Pacific Mutual made a loan of $14,000 upon Maddox's agreement to diligently improve said property at a cost of not less than $16,000 in accordance with all FHA requirements and all applicable restrictions and building or zoning laws, ordinances or regulations. To secure said loan Maddox executed a deed of trust to Pacific Mutual on said Lot 25. The due date of the $14,000 note was November 27, 1956, and it provided for interest at the rate of 5% per annum. Although plans and specifications for the house to be constructed on Lot 25 were in Pacific Mutual's office, they were never submitted to Westglen for approval. At the time when Westglen inquired about the subordination agreement it had not been drawn. It was later prepared by Pacific Mutual, but was never presented to Westglen for execution. Westglen knew that Maddox had started construction of the house on Lot 25 within the 120-day period provided for the second house to be begun. One lot had already been built upon by Maddox. Before the house was completed Maddox abandoned the construction, and Pacific Mutual took over the completion of the house and started proceedings to foreclose under its deed of trust lien, when this suit was filed by Westglen.

Pacific Mutual and National Title contend that Westglen and Maddox entered into a third party beneficiary contract in favor of the lender of the money for construction (Pacific Mutual), and that the trial court sitting in equity should have established this obligation. The parties agree that imposition of this obligation will establish Pacific Mutual's right to the money paid into the registry of the court by National Title. In determining whether this obligation exists, we must construe the contract made between Maddox and Westglen, and the operative effect of certain of its provisions.

Respondent Westglen does not challenge petitioners' assertion that the provision in the deed and the subsequent contract was in its nature a third party beneficiary contract as such. It maintains that there was only an agreement to execute a future contract, and that the agreement is unenforceable because it is too vague and indefinite. We are cited to the familiar rule that an agreement to make a future contract must be definite and certain upon all the subjects to be embraced or it

is nugatory and unenforceable. Stekoll Petroleum Co. v. Hamilton, 152 Texas 182, 255 S.W. 2d 187; Radford v. McNeny, 129 Texas 568, 104 S.W. 2d 472.

We believe the agreements contained in the deed to Maddox and in the construction contract between Maddox and Westglen are sufficiently definite to obligate Westglen to subordinate its vendor's lien to Pacific Mutual's construction loan lien, and that the rulings of the courts below in this respect were erroneous.

Westglen's argument runs thus: The agreement in the deed and in the subsequent contract was actually an agreement to enter into a contract of subordination at a future date. However, the obligation to enter into this contract of subordination would not arise until the lender, which turned out to be Pacific Mutual, had furnished the terms of the construction loan to Westglen for its approval. If the material terms of the loan (such as rate of interest, length of loan, pay-out provisions, etc.) were satisfactory to the respondent, a formal contract subordinating the vendor's lien and embodying these terms would be executed. If, however, the terms of the construction loan did not meet Westglen's approval, Westglen says that *it and the lender* could negotiate until a loan with terms satisfactory to Westglen was agreed upon, after which Westglen would be obligated to subordinate.

1  Where the parties sign and thereby enter into a written contract, they are bound by its provisions. Pyle v. Eastern Seed Co., 145 Texas 385, 198 S.W. 2d 562. Here we will determine the nature and extent of the obligation by construing the warranty deed and the subsequent contract together, since they constitute but one transaction. Board of Insurance Commissioners v. Great Southern Life Insurance Co., 150 Texas 258, 239 S.W. 803; Veal v. Thomason, 138 Texas 341, 159 S.W. 2d 472.

2  The cardinal rule of construction of unambiguous contracts is to ascertain the intention of the parties as expressed in the language used in the instrument itself. Citizens National Bank v. Texas & Pacific Ry. Co., 136 Texas 333, 150 S.W. 2d 1003; Jackson v. Richards, Texas Civ. App., 157 S.W. 2d 982, writ ref. This intention is determined from the language of the instrument itself. Reconstruction Finance Corporation v. Gossett, 130 Texas 535, 111 S.W. 2d 1066. The language of the contract is the determinant of the nature and extent of the obligation. Citizens National Bank v. Texas & Pacific Ry. Co., supra.

**3** Applying these rules, we find that Westglen agreed to subordinate its vendor's lien to a construction loan lien in an amount not exceeding $14,000.00. The additional requirement that a subordination agreement setting out the amount of the construction loan be drawn up is imposed by paragraph four of the contract. These are the only limitations upon Westglen's obligation to subordinate to be found in the two instruments. Since it cannot be said that a subordination agreement must contain more than the agreement to subordinate together with the amount of the lien thereby made superior, see Miles Realty Co. v. Dodson, Texas Civ. App., 8 S.W. 2d 516, writ dismissed, we hold that under the facts and circumstances of this case Westglen was obligated to subordinate its vendor's lien to the construction lien of Pacific Mutual. Under the terms of the agreement, it was unnecessary for the lender or Maddox to get Westglen's approval of the terms of the construction loan, so long as the terms of the loan were reasonable and did not exceed $14,000.00 in amount. It is shown that the terms of this loan are reasonable as a matter of law.

**4.** Respondent next argues that even should we hold that the agreement here questioned was sufficiently definite to create an obligation on Westglen's part, petitioners may not seek to invoke equity powers because of their conduct. Respondent specifically objects to the failure of Pacific Mutual or National Title to prepare the subordination agreement provided for in the contract and submit it to Westglen for signing. It cannot be denied that paragraph four of the contract imposed upon the third party lender the obligation to draw up a subordination agreement for Westglen's execution, and that probably Pacific Mutual, now suing under the terms of that instrument, was bound by that requirement. Cf. Price v. Lee, Texas Civ. App., 119 S.W. 2d 673, writ dism.; Benavides v. Laredo National Bank, Texas Civ. App., 91 S.W. 2d 372. We do not think that the equitable maxim of "clean hands" is applicable to the facts of this case, although breach of contract is ordinarily sufficient to prevent a party from seeking equitable relief. 30 C.J.S., Equity, Sec. 99. However, as was said in Kirkland v. Handrick, Texas Civ. App., 173 S.W. 2d 735, 737, writ ref., the doctrine "does not operate so as to repel all sinners from a court of equity, . . . . * * * equity will consider the conduct of the adversary, the requirements of public policy, and the relation of the misconduct to the subject matter of the suit and to defendant."

Since Westglen has not been damaged by the failure of petitioners to prepare the subordination agreement as per the

contract, we do not think their breach is such conduct as requires us to foreclose their equitable redress. Likewise, petitioners' failure to submit house plans to Westglen for its approval "as per restrictions" is not such a breach as would prevent them from seeking equitable enforcement of the subordination agreement, it being undisputed that the house plans did comply with all restrictions.

Accordingly, we reverse the judgments of both courts below and render judgment here for petitioners.

Opinion delivered May 13, 1959.

Rehearing overruled July 8, 1959.