**Mozelle McLEAN, Appellant,**

v.

**E. G. HILLMAN, Appellee.**

No. 7136.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 27, 1961.

Rehearing Denied Jan. 3, 1962.

Jack C. Burroughs, Dallas, for appellant.

Leffingwell, Dawkins & Oehmann, Dallas, for appellee.

NORTHCUTT, Justice.

On February 9, 1960, Mrs. Mozelle McLean, a widow, leased a resort tourist lodge located on Texhoma Lake, known as Hi-Land Lodge, to Mr. E. G. Hillman under a lease contract for a period of three years beginning on the 1st day of March, 1960 and ending on February 28, 1963. At the time of making the lease agreement Mrs. McLean sold to Mr. Hillman certain merchandise such as blankets, linens, dishes, etc. The sales contract was later drawn up in writing and dated February 13, 1960. The sales contract provided that at the termination of the lease Mrs. McLean would repurchase such merchandise or their replacements. The written lease contract provided for the payment of $1000.00 which was for the first and last months rent on the contract and $500.00 the first of each following month starting April, 1960.

Appellant, plaintiff in the trial court, and appellee, defendant in the trial court, will be hereafter referred to as they were in the trial court.

Defendant took possession of the premises on March 1, 1960, operated the same and paid the rent as called for in the lease up to July 13, 1960, at which time defendant, under his own testimony, wanted to get out from under the lease and wrote a letter to plaintiff, complaining that the sewerage disposal system was inadequate and because of that he intended to cancel the lease. Defendant claimed that plaintiff had concealed the fact that the septic tank was inadequate and same amounted to a fraud and also claimed that the lease was void because it did not contain an adequate description of the land; all of this was done by letter and in said letter the property was tendered back to the plaintiff with a demand that defendant be reimbursed for expenses which he had incurred because of the lease.

Plaintiff returned from Colorado where she had been visiting for her health and before anything further was done, the defendant, through his attorney, wrote a letter demanding that the lease be canceled and that plaintiff repurchase all of the tangible merchandise (blankets, dishes, etc.), together with the payment of $320.00 which defendant claimed he had spent for replacements, making a total of $1,763.00 and also demanded return of one-half of

the month's rent which had been paid in advance for the last month of the three year lease. Defendant refused to pay the rent beginning August 1, 1960. Further, in the letter dated August 5, 1960, defendant stated that if plaintiff did not repurchase the merchandise by paying him the sum of $1,763.00 and also refund to him $266.56 of the last month's rent on the lease, that he would sell all of the plaintiff's furniture and fixtures, including the air-conditioner, stoves, and machinery. This letter was written by defendant's attorney, which contained a post script addressed to the defendant which we deem necessary to set out verbatim, and is as follows:

"Mr. Gene Hillman

"Gene: You purchased everything on that list from Mrs. McLean and it is yours unless she wants to repurchase it as she agreed that she would. I don't know whether or not it's worth $1,600, but I know she cannot replace it for that. If she doesn't want to meet our terms I suggest that you have a second hand furniture dealer from both Sherman and Denison to come out and give you written bids as to what they will pay you for everything on the list and sell it to them lock, stock, and barrel."

Upon receipt of that letter, plaintiff immediately filed this suit, seeking a temporary restraining order and injunction, which was issued and the defendant was restrained from selling any of the furniture and fixtures. Defendant then voluntarily left the leased property and plaintiff took over the same.

Defendant then filed an answer and cross-action to this suit wherein it was claimed that he was entitled to specific performance of the repurchase agreement and for judgment in the sum of the $1,700 plus, and one-half of the last month's rent which had been paid on the lease. Plaintiff filed amended pleadings seeking damages for the property which had been damaged while the defendant had possession of it.

The case was tried to a jury and the jury returned a verdict answering all of the material Special Issues in favor of plaintiff, finding that defendant had forced plaintiff to cancel the lease because of his own acts and conduct and his threats that he would sell all the furniture and fixtures belonging to Mrs. McLean; further finding that the septic tank disposal system was adequate and met all the County and State requirements and answered certain Special Issues entitling plaintiff to money judgment in the sum of $355.00.

Plaintiff filed motion for judgment on the verdict, and defendant filed a motion requesting the Court to disregard answers to certain issues and for judgment for specific performance on the repurchase contract, claiming that the repurchase agreement was a separate and distinct contract from the lease agreement. It being claimed by plaintiff that the lease contract and the purchase agreement was intended and did amount to, as a matter of law, one contract, since both were interdependent upon each other.

The trial court overruled plaintiff's motion for judgment and entered judgment for defendant for specific performance, off-setting the same by the sum of $355.00 as found by the jury as damages to certain of the leased property. Motions for new trial were filed and overruled, from which this appeal was perfected to the Court of Civil Appeals for the 5th Supreme Judicial District of Texas at Dallas and was transferred to this court by order of the Supreme Court.

After the verdict of the jury had been received by the court the plaintiff presented her motion for judgment upon the verdict of the jury declaring the lease agreement canceled for damages in the sum of $355.00 and that defendant have all his property covered by the sales contract. (The articles being listed.) In defendants motion for judgment it was contended the undisputed evidence established that Mrs. McLean contracted with the defendant by sepa-

rate contracts that she would repurchase the personal property set out in the sales contract upon termination of the lease and consequently he was entitled to the agreed value in the sum of $1,443.00 less the $355.00 damages found by the jury. The defendant in his motion for judgment also requested the court to disregard the jury's answers to special issue No. 4. In answer to special issue No. 4 the jury found that the defendant forced Mrs. McLean to declare the lease agreement canceled by making threats that he would sell all the furniture and fixtures belonging to Mrs. McLean.

It is agreed that the lease contract and sales contract were made at the same time, and defendant so testified, but they were drawn at different dates. The lease agreement was dated February 9, 1960 and the purchase agreement as to the linens, dishes, etc., was dated February 13, 1960. In the purchase agreement dated February 13, 1960 it is stated "In connection with lease agreement on Hi-Land Lodge dated February 9, 1960, between the same parties * * *." The lease provided for the term of three years beginning the first day of March, 1960. On March 1, 1960, defendant paid by check the $1,000.00 providing for the first and last month of the lease, and also at the same time paid for the supplies under the sales contract in the sum of $1,628.79. The defendant testified he wanted to get out of the lease, and unless Mrs. McLean came to his terms he was going to sell everything she had. Defendant's attorney wrote to plaintiff's attorney that if plaintiff did not intend to comply with her agreement to repurchase the items including stoves, refrigerators, air-conditioners, linens, chairs, etc., that they would sell them to the highest bidder. The only item mentioned in this letter that was included in the sales contract was linens.

We think it is well settled in this state that two writings connected by reference one to the other, or simultaneously made, with respect to the same subject matter and proved to be parts of an entire

transaction constituted but a single contract as if embodied in one instrument. It is stated in the case of Board of Ins. Com'rs et al. v. Great Southern Life Ins. Co. et al., 150 Tex. 258, 239 S.W.2d 803, 809 by the Supreme Court as follows:

"It is a generally accepted rule of contracts that 'Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.' 17 C.J.S., Contracts, § 298, p. 714. The rule is followed by the courts of this state. Miles v. Briggs et al., Tex.Civ.App., 18 S.W.2d 850 (writ dism.); Veal et al. v. Thomason, 138 Tex. 341, 159 S.W.2d 472; 10 Tex.Jur., p. 286 sec. 166."

In the case of Pacific Mutual Life Insurance Company et al. v. Westglen Park, Inc., Tex., 325 S.W.2d 113, 116, by the Supreme Court it is stated:

"[1, 2] Where the parties sign and thereby enter into a written contract, they are bound by its provisions. Pyle v. Eastern Seed Co., 145 Tex. 385, 198 S.W.2d 562. Here we will determine the nature and extent of the obligation by construing the warranty deed and the subsequent contract together, since they constitute but one transaction. Board of Insurance Commissioners of Texas v. Great Southern Life Insurance Co., 150 Tex. 258, 239 S.W. 2d 803; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472.

"[3] The cardinal rule of construction of unambiguous contracts is to ascertain the intention of the parties as expressed in the language used in the instrument itself. Citizens National Bank in Abilene v. Texas & Pacific R. Co., 136 Tex. 333, 150 S.W.2d 1003; Jackson v. Richards, Tex.Civ.App., 157 S.W.2d 982, writ ref. This intention is determined from the language of the instrument itself. Reconstruction Finance Corporation v. Gos-

sett, 130 Tex. 535, 111 S.W.2d 1066. The language of the contract is the determinant of the nature and extent of the obligation. Citizens National Bank in Abilene v. Texas & Pacific R. Co., supra."

Defendant testifying that the lease contract and sales contract were made at the same time, and the sales contract providing "in connection with the lease agreement", we think clearly shows that this whole matter would constitute but one single transaction. In looking to the intention of the parties under the terms of this whole transaction, which is plain and unambiguous, we do not believe that any other construction could be had as to the meaning and intention of the parties than that the term "termination of the lease" could be understood or mean anything other than at the end of the lease, February 28, 1963.

The defendant testified that he wanted to get out from under the lease contract, and threatening the plaintiff as he did and failing to pay the rent, clearly shows the defendant was not living up to the terms of the lease contract. The jury found upon abundance of evidence that defendant brought about the termination of the lease agreement by his own act and conduct; that defendant forced the plaintiff to declare the lease agreement canceled by making threats that he would sell all the furniture and fixtures belonging to the plaintiff; that defendant threatened the plaintiff, between July 4 and August 6, 1960, that if she did not repurchase certain equipment as shown in plaintiff's exhibit No. 3, and pay him the sum of $1,628.79, that he would sell all of the furniture and fixtures, including the air-conditioners, refrigerators, stoves and machinery connected with such property, and that in making such threats he was not acting in good faith in the belief that he was exercising a right. The jury also found that the sewerage disposal system at Hi-Land Lodge complied with the requirements of the State and County Health authorities on July 13, 1960, the date defendant notified the plaintiff that he was rescinding the lease on Hi-Land Lodge and further found that the Hi-Land Lodge was suitable for the purpose for which it was leased by the plaintiff to the defendant during the period from March 1, 1960 through July 13, 1960, inclusive.

By defendant's counterpoints he complains that plaintiff has not properly brought this appeal under the rules and also that the court was correct in his rulings. Without discussing these assignments, we think the plaintiff has properly brought and presented this appeal under Rule 324, Texas Rules of Civil Procedure and the trial court erred in rendering judgment as he did.

Under defendants own admissions, we do not believe that he came into court with clean hands but forced the cancellation of the lease in question. We are of the opinion and so hold that the lease contract and sale of the personal property constituted but one single transaction and that the meaning of the term "termination of the lease" meant at the end of the three years lease. The trial court erred in setting aside special issue No. 4 and in granting judgment for the defendant. Defendant could not cancel the lease and compel plaintiff to repurchase the personal property without showing that he had performed his part of the contract. Gober v. Hart, 36 Tex. 139; United States v. Davidson, 5 Cir., 139 F.2d 908; Empire Gas & Fuel Co. Inc., v. Lone Star Gas Co. Inc., 5 Cir., 289 F. 826.

Judgment of the trial court is reversed and remanded to the trial court with instructions that judgment be rendered for plaintiff upon the verdict of the jury and that all costs be assessed against the defendant.