# THE ATTORNEY GENERAL
# OF TEXAS
## AUSTIN, TEXAS 78711


April 6, 1966

Honorable Curtis Renfro
District Attorney
46th Judicial District
Vernon, Texas

Opinion No. C-646

Re: Authority of Wilbarger
County to pay for land
on which is to be estab-
lished a facility to be
operated by the Texas
Department of Mental
Health and Mental Retar-
dation, and related ques-
tions.

Dear Mr. Renfro:

Your request for an opinion on the above subject matter poses the following questions:

"1. Can Wilbarger County pay for the land in connection with this project out of taxes collected for the permanent improvements to be used by Wilbarger County?

"2. If Wilbarger County accepts the title to said land, may the county, as a political subdivision, transfer the title to said land to the State of Texas- or, to the Texas Department of Mental Health and Mental Retardation as set out in Article 5547, Sections 201 to 204?

"3. Since Wilbarger County has established a Hospital District under Provision 4494Q in Section 22, Acts of the 59th Legislature, and based under the authority of Article 9, Section 9 of the Constitution of Texas, will the purchase by Wilbarger County of certain lands to be used by the Texas Department of Mental Health and Mental Retardation be interfering with said Hospital District - or in conflict therewith?

"4. If your answer to question No. 1 is in the affirmative, may Wilbarger County issue the warrants for the payment of said land to be used by the Texas Department of Mental Health and Mental Retardation?" (Emphasis yours).

Section 9 of Article IX, Constitution of Texas, provides:

"Sec. 9. The Legislature may by law provide for the creation, establishment, maintenance and operation of hospital districts composed of one or more counties or all or any part of one or more counties with power to issue bonds for the purchase, construction, acquisition, repair or renovation of building and improvements and equipping same, for hospital purposes; providing for the transfer to the hospital district of the title to any land, buildings, improvements and equipment located wholly within the district which may be jointly or separately owned by any city, town or county, providing that any district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants and assume the outstanding indebtedness incurred by cities, towns and counties for hospital purposes, prior to the creation of the district, if same are located wholly within its boundaries, and a pro rata portion of such indebtedness based upon the then last approved tax assessment rolls of the included cities, towns and counties if less than all the territory thereof is included within the district boundaries; providing that after its creation no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within the boundaries of the district; providing for the levy of annual taxes at a rate not to exceed seventy-five cents (75¢) on the one hundred dollar valuation of all taxable property within such district for the purpose of meeting the requirements of the district's bonds, the indebtedness assumed by it and its maintenance and operating expenses, providing that such district shall not be created or such tax authorized unless approved by a majority of the qualified property taxpaying electors thereof voting at an election called for the purpose; and providing further that the support and maintenance of the district's hospital system shall never become a charge against or obligation of the State of Texas nor shall any direct appropriation be made by the Legislature for the construction, maintenance or improvement of any of the facilities of such district.

"Provided, however, that no district shall be created except by act of the Legislature, and then only after thirty (30) days' public notice to the district affected, and in no event may the Legislature provide for a district to be created without

the affirmative vote of a majority of the taxpaying voters in the district concerned." (Emphasis added throughout).

Article 4494q-22, Vernon's Civil Statutes, provides for the creation, establishment, maintenance and operation of the Wilbarger County Hospital District in accordance with the provisions of Section 9, Article IX of the Constitution of Texas. Section 1, Article 4494q-22, V.C.S.

Section 13 of Article 4494q-22, Vernon's Civil Statutes, provides:

"Sec. 13. After the hospital district has been organized pursuant to this Act, neither Wilbarger County nor any city therein shall levy any tax for hospital purposes; and such hospital district shall be deemed to have assumed full responsibility for the furnishing of medical and hospital care for the needy and indigent persons residing in said hospital district from the date that taxes are collected for the hospital district."

The Texas Mental Health and Mental Retardation Act is codified in Vernon's as Articles 5547-201 through 5547-204, Vernon's Civil Statutes. Article 3 of the Mental Health and Mental Retardation Act, codified in Vernon's as Article 5547-203, V.C.S., provides for the establishment and operation of community centers for mental health and mental retardation services. Section 3.01 provides:

"Sec. 3.01. (a) One or more cities, counties, hospital districts, school districts, rehabilitation districts, state-supported institutions of higher education, and state-supported medical schools, or any combination of these, may cooperate, negotiate, and contract with each other through their governing bodies to establish and operate a community center.

"(b) As used in this Act, a 'community center' may be:
(1) a community mental health center, which provides mental health services; or
(2) a community mental retardation center, which provides mental retardation services; or
(3) a community mental health and mental retardation center, which provides mental health and mental retardation services."

Hon. Curtis Renfro, page 4 (C-646)


Section 1.01 of Article 1 of the Texas Mental Health and Mental Retardation Act (Article 5547-201, V.C.S.) states that the purpose of the Act is for the conservation and restoration of mental health among the people of this State and to provide for the effective administration and coordination of mental health services at the State and local levels.

Subdivisions 5, 6 and 7 of Section 1.02 of Article 1 of the Mental Health and Mental Retardation Act define mental health services, mentally retarded person, and mental retardation services as follows:

"(5)   'mental health services' includes all services concerned with the prevention and detection of mental disorders and disabilities and the treatment and rehabilitation of mentally disordered persons;

"(6)   'mentally retarded person' means any person other than a mentally disordered person, whose mental deficit requires him to have special training, education, supervision, treatment, care or control in his home or community, or in a state school for the mentally retarded;

"(7)   'mental retardation services' includes all services concerned with research, prevention, and the detection of mental retardation and all services related to the education, training, rehabilitation, care, treatment, supervision, and control of mentally retarded persons;"

In view of the definitions quoted above, mental health services and mental retardation services constitute medical and hospital care, within the meaning of Section 9 of Article IX of the Constitution of Texas. Scott v. Guardian Life Insurance Co., 397 S.W.2d 463 (Tex.Civ.App., application pending). Therefore, in the event a hospital district is created for the county, the county does not have the power to levy taxes to provide for such medical services, as such power and obligation rest exclusively on the hospital district. Bexar County Hospital District v. Crosby, 160 Tex. 116, 327 S.W.2d 445 (1959); Attorney General's Opinion C-382 (1965); Attorney General's Opinion C-641 (1966).

While Bexar County Hospital District v. Crosby, supra, and the foregoing Attorney General's opinions construed similar provisions of Section 4 of Article IX of the Constitution of Texas

and Article 4494n, Vernon's Civil Statutes, the principles announced in these authorities are equally applicable to the construction of Section 9, Article IX of the Constitution of Texas and Article 4494q-22.

You are therefore advised in answer to your first question that Wilbarger County, under the facts submitted, does not have authority to pay for land for the purpose of establishing a community center for mental health and mental retardation services out of taxes collected for permanent improvements to be used by Wilbarger County; rather, such power remains in the Wilbarger County Hospital District pursuant to the provisions of Section 9 of Article IX of the Constitution of Texas, Article 4494q-22 and Article 5547-203, Vernon's Civil Statutes. Thus, the Wilbarger County Hospital District may provide for the establishment and operation of a community center for mental health and mental retardation services, pursuant to the provisions of Section 3.01 of the Texas Mental Health and Mental Retardation Act, and has the authority to purchase the land on which is to be established such a facility, to be operated by the Texas Department of Mental Health and Mental Retardation.

In view of our answer to Question 1, it is unnecessary to answer your remaining questions.

## SUMMARY

Section 9 of Article IX of the Constitution of Texas does not permit a county in which a hospital district is created pursuant thereto to expend tax monies for medical and hospital services, but places such power, duty and authority in such hospital district. The hospital district in such event is the local authority through which community centers for mental health and mental retardation services are to be established, pursuant to the provisions of Article 5547-203, Vernon's Civil Statutes.

Yours very truly,

WAGGONER CARR
Attorney General

By John Reeves
John Reeves
Assistant

JR:ms

Hon. Curtis Renfro, page 6 (C-646)


APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Malcolm Quick
W. O. Shultz
Roy Johnson
James Strock

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright