**TEXAS RESERVE LIFE INSURANCE COMPANY, Appellant,**

v.

**Alton ALLEN, Appellee.**

**No. 283.**

Court of Civil Appeals of Texas.

Tyler.

May 4, 1967.

Rehearing Denied June 1, 1967.

Thompson, Coe, Cousins & Irons, Emory L. White, Jr., Dallas, for appellant.

Fields, Fields & Hardee, Robert H. Fields, Athens, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from a suit instituted by Alton Allen, appellee, against the Texas Reserve Life Insurance Company, appellant, for recovery of $5,600.00 alleged by appellee to be a debt arising from an agreement wherein Alton Allen was employed by Texas Reserve Life Insurance Company as an insurance agent and manager of agents. In plaintiff's original petition, Alton Allen alleged that the Texas Reserve Life Insurance Company owed him a monthly salary of $800.00 for a seven-month period beginning June 1, 1964, and ending December 31, 1964, by virtue of a contract introduced in evidence as Plaintiff's Exhibit 1 (P–1) which provided a salary adjunct to the commission income of Alton Allen for services as managing agent. The contract herein sued upon will hereafter be referred to as "P–1."

Texas Reserve Life Insurance Company denied any such indebtedness, alleging that Alton Allen's discharge was justified because of his failure *to perform substantially* his duties and obligations for which he was employed. In addition, the appellant alleged that no damage was shown by Alton Allen to have resulted as a consequence of his discharge from its employment.

This case was tried before a jury and pursuant to the jury's findings, judgment was entered for the plaintiff in the amount of $4,655.00. From this judgment, appellant has duly perfected its appeal to this court.

Appellant by its Points of Error 1 and 2 contends that:

(1) "The Trial Court erred in refusing to submit Defendant's Special Issue No. 8a, wherein it was inquired if Alton Allen failed to substantially perform his employment agreement, prior to his discharge."

(2) "The Trial Court erred in limiting Special Issue No. 8, wherein it is inquired if Alton Allen failed to substantially perform the duties imposed upon him by his employment agreement, to the part of the employment agreement marked 'P–1.'"

It seems that the basic difference between the parties is as to the law applicable to an agreement which is evidenced by three separate written instruments. These instruments are "P–1," an agent's contract, and a manager's contract, all of which were signed by appellee, Alton Allen, and by an authorized representative of the appellant. The written instrument designated as "P–1" is dated January 3, 1963; the agent's contract was executed on January 17, 1964, but is shown to have been effective on January 4, 1964; and the manager's contract being a supplementary agreement between the parties is dated January 4, 1964. The undisputed evidence shows that "P–1" was actually written on January 3, 1964, rather than January 3, 1963, as shown on the instrument.

Appellee is seeking to recover only under the instrument (P–1) executed January 3, 1964, alleging that appellant breached this contract by its letter to appellee dated May 1, 1964, notifying him of the termination of his agent's and manager's contracts as of May 30, 1964. The appellee has not made the agent's and manager's contracts any part of his suit against the appellant. He is not basing his suit in whole or part upon the agent's and manager's contracts. It is appellee's position that he is entitled to recover the salary stipulated in P–1, disregarding the agreements of

the parties contained in the agent's and manager's contracts.

The appellant urged throughout the trial in the court below and so urges in this court that the instrument executed January 3, 1964, (P–1), was merely an adjunct to the standard form of employment agreement into which the parties entered, and therefore inadequate by itself as the basis for appellee's cause of action. The instrument executed on January 3, 1964, (P–1), reads as follows:

"TEXAS RESERVE LIFE
INSURANCE COMPANY
"P. O. Box 269,
"San Antonio 6, Texas

"January 3, 1963

"Texas Reserve Life Insurance Company of San Antonio, Texas has agreed to pay Alton Allen of Tyler, Texas the sum of $800.00 a month salary for at least 12 months. This amount shall not be charged to his account. He will also draw his commissions and override on all agents and brokers.

"The Company also agrees to let him keep brokerage contracts with Old National and Continental Life of Houston, Texas, for purpose of servicing present policyholders. We also agree to let him keep his office at 110 Beckam Terrace Building.

"Mr. Alton Allen will agree to write at least $20,000, annualized premium per year. He also agrees to pay office rent, secretary, box rent, telephone, answering service & stamps.

"/s/ Alton Allen
_____
Alton Allen

"/s/ J. Henry Von Pein
_____
J. Henry Von Pein, Vice President

Director of Agencies

"/s/ L. E. Rawlins,
_____
L. E. Rawlins, Superintendent of Agencies"

If the agent's and manager's contracts with the contract herein sued upon (P–1) are each a part of the entire transaction and constitute but a single contract as if embodied in one instrument, then the agent's and manager's contracts of employment should also be considered in determining whether the appellee failed to substantially perform the duties imposed upon him by his employment agreement.

Special Issue No. 8 as submitted by the court and the jury's answers thereto reads:

"SPECIAL ISSUE NO. 8

"Do you find from a preponderance of the evidence that Alton Allen, prior to his discharge by Texas Reserve, failed to substantially perform the duties imposed upon him by his employment agreement marked P–1?

"Answer 'He failed to substantially perform'
or
'He did not fail to substantially perform'

"ANSWER: *He did not fail to substantially perform*

"You are instructed by the Court that the term 'substantially perform' as used in this charge, is meant that performance of the employee of his obligation in the scope of his employment as a man of ordinary prudence in an industry would have done under the same or similar circumstances; you are further instructed that the term 'substantially perform', as used in this charge, does not mean an exact performance in every slight or unimportant detail, but means *full performance in all of the essential elements necessary to the accomplishment of the entire purpose of the employment contract.*"

Appellant's Requested Issue 8–a, which was refused by the court, reads:

"Do you find from a preponderance of the evidence that Alton Allen, prior to his discharge by Texas Reserve, failed to sub-

stantially perform the duties imposed upon him by his employment agreement?

"You are instructed by the Court that by the term 'substantially perform' as used in this charge, it is meant that performance of the employee of his obligations in the scope of his employment as a man of ordinary prudence in an industry would have done under the same or similar circumstances; you are further instructed that the term 'substantially perform', as used in this charge, does not mean an exact performance in every slight or unimportant detail, but means full performance in all of the essential elements necessary to the accomplishment of the entire purpose of the employment contract.

"Answer 'Yes' or 'No'.

"ANSWER: _____."

The above Requested Special Issue 8–a and the definition of "substantially perform" given in connection therewith seem to be correct in form and substance for determining if an employer discharged an employee for good cause. Dixie Glass Co. v. Pollak, 341 S.W.2d 530, 91 A.L.R.2d 662, (Tex.Civ.App., 1960, Houston, writ ref., n. r. e., 162 Tex. 440, 347 S.W.2d 596).

Special Issue No. 8 as submitted by the court in the present case, however, limited the jury's consideration of "substantial performance of the employment contract" to the instrument marked "P–1."

As we view the record, it is our opinion that the court was in error in so limiting the jury to the instrument "P–1," since the letter agreement was merely a part of the entire employment agreement and it did not contain all duties, obligations and matters which would relate to the performance of the employment agreement. It is apparent from the record that the court held as a matter of law that the letter agreement was complete in itself and was the employment agreement. With this holding we cannot agree, for, it is a generally accepted rule of contracts that where several instruments,

executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other. Board of Insurance Commissioners v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803, 809, (1951); Pacific Mutual Life Insurance Company v. Westglen Park, Inc., 160 Tex. 1, 325 S.W.2d 113, 116, (1959); McLean v. Hillman, 352 S.W.2d 310, 313 (Tex.Civ. App., 1961, Amarillo, n. w. h.).

The appellee gave the following testimony:

"Q Mr. Allen, you were negotiating with reference to an agent's contract and a manager's contract at the same time you were talking about this part of the contract, were you not?

"A Mr. Coe, let me say this, that in order for me to sign a contract with them, as an agent or district agent, I was strictly depending on this contract. This was the first letter of agreement between us.

"Q In other words, you said to them in effect: 'I will come to work for you under your agent's contract and your manager's contract, provided you give me this contract?'

"A That is correct, yes, sir.

"Q They all were negotiated at the same time, in the same conversation that you had with them?

"A Well, this is the first contract I entered in with them on. Then they mailed me my district agent's contract and my agent's contract to sign later.

"Q They mailed them all to you, did they not?

"A No, I signed this one when I was there. They asked me to sign this one and said they would mail it to me along with their signatures.

"Q All right. You left it there with the understanding that if they would agree to the provisions set forth in that instru-

ment, that you would go to work for them under the agent's contract and the manager's contract which they were going to send to you.

"A Yes, sir, that's correct.

"Q All right. And, you had discussed all three, the provisions in here, the commissions you would get under your agent's contract and the compensation you would get under your manager's contract all in the same series of conversations.

"A That is correct, yes, sir.

"Q And, you recognize that the things that they were going to pay you the salary for tied into your management contract?

"A Certainly, you couldn't work for an insurance company unless you had a manager's or an agent's contract. * * *"

From the undisputed evidence it is clear the instrument dated January 3, 1963, (P-1), and the agent's and manager's contracts, executed for the same purpose and in course of the same transaction, are to be construed together.

The agent's and manager's contracts each contain numerous provisions, stipulations and conditions affecting the employment agreement between the parties.

Appellee's duties as an agent for the appellant were derived from the various provisions in the employment agreement and, in particular, the manager's contract.

In Paragraph 1 of the manager's contract, which supplemented the agent's contract, the duties of a manager are stated in part as follows:

"1. Second Party shall secure Agents with whom the Company shall enter into Agent's Contracts for said territory or a part thereof, if they be satisfactory to the Company, which Contracts shall be on the forms prepared by the Company, and Second Party shall personally and by said Agents solicit applications for life and endowment insurance and annuities in the Company and shall canvass and develop all of said territory and collect all premiums upon such insurance and annuities when issued and for which the Company's official renewal receipts have been delivered to him. Second Party shall act exclusively for the Company so far as to tender to it all applications secured by him, his Agents and other Agents assigned to the territory of Second Party and shall devote his entire time, talents and energies to such solicitation and development in the business of his territory. * * *"

Paragraph 2 of the manager's contract in part provides for an overriding first year commission and overriding renewal commissions in connection with policies issued upon the applications procured by the agents assigned to the appellee, Alton Allen.

Construing the instrument "P-1," the agent's contract, and the supplementary manager's contract together, it is apparent that the appellee, Alton Allen, was employed on a full-time basis to devote full energy and talents to the business, with the exception of those brokerage contracts referred to in the second paragraph of the instrument dated January 3, 1963, and referred to as "P-1" for the limited purposes stated therein.

Since the trial court erred in holding, in effect, that the "P-1" instrument constituted the entire employment agreement between the parties, it follows that Special Issue No. 8, as submitted, was too limited in scope and did not constitute an ultimate issue. In this sense, therefore, the issue was evidentiary and the favorable answer thereto will not support a judgment for appellee. The issue, even in connection with the other issues submitted, does not afford to appellee a complete ground of recovery. Points of Error 1 and 2 are sustained.

In view of our disposition of this case, we do not reach the other Points of Error.

Reversed and remanded.