**Lawson C. ADAY, Appellant,**

v.

**J. C. MARTIN and James W. Johnson, Appellees.**

**No. 678.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 29, 1972.

Rehearing Denied April 13, 1972.

Bonner & Ball, Nile E. Ball, Curtis Bonner, Harlingen, for appellant.

Jones, Flores & Yzaguirre, J. Perry Jones, McAllen, for appellees.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after non-jury trial that Lawson C. Aday, plaintiff-appellant take nothing against J. C. Martin and James W. Johnson, defendants-appellees.

Appellant sued appellees for a real estate commission, interest and attorney's fees based upon a letter agreement dated March 10, 1969. The case was tried upon a stipulation of facts along with the testimony of three witnesses and several written exhibits.

Appellant asserts one point of error reading as follows:

"The trial court erred in failing to conclude that the letter agreement, as a matter of law, obligated appellees to pay appellant 6% commission of selling price when they sold the property to appellant's prospective purchaser."

The trial court made and filed thirteen findings of fact and three conclusions of law as follows:

### "FINDINGS OF FACT

1. Prior to the 7th of March, 1969, J. C. Martin, M. D. and James W. Johnson were the owners of lot Two (2), Charles W. Fulwider Subdivision, an Addition to the City of McAllen, Texas.

2. Prior to the 7th of March, 1969, Lawson Aday, who was a licensed Real Estate Broker, became associated with some undisclosed principals who were interested in purchasing Lot Two (2), Charles W. Fulwider Subdivision an Addition to the City of McAllen, Texas.

3. Lawson Aday was instructed by the undisclosed principals to contact J. C. Martin and James W. Johnson to negotiate for a purchase of the property in the name of a Trustee in order that their identity might remain unknown. Such Trustee was to be Ronald Case.

4. When Lawson Aday first approached J. C. Martin and James W. Johnson regarding the sale of the property, he asked for a listing on the property but the owners would not give him a listing. He previously had a thirty (30) day listing but it expired approximately a year before.

5. Lawson Aday negotiated with J. C. Martin and James W. Johnson and secured an option agreement for the purchase of said property in the name of Ronald Case as Trustee. The option agreement was dated March 7, 1969, and was for a period of one hundred eighty (180) days. The sum of $5,000.00 was paid for the option agreement and under a provision for a one hundred eighty (180) day extension of the option agreement, Sellers were paid an additional $5,000.00. The sales price was to be $110,000.00.

6. In connection with the option agreement, at Lawson Aday's request, J. C. Martin and James W. Johnson gave Lawson Aday a letter agreement as follows:

'March 10, 1969

Mr. Lawson C. Aday
Box 1061
McAllen, Texas 78501

Dear Mr. Aday:

Since you have obtained a prospective purchaser for our property on South 10th Street and have produced option contract in the amount of $110,000.00 with $5,000.00 cash option money, we agree to the following:

To pay you a Sales Commission of 6% of selling price.

To pay you $1,000.00 of the $5,000.00 option money. If the option is extended, then upon receipt of $5,000.00 for an extension of time we will pay you $1,000.00. However, in the event the option is exercised, then any money received by you will be deducted from your 6% sales commission.

/s/ J. C. Martin, M. D.
J. C. Martin, M. D.

/s/ James W. Johnson
James W. Johnson'

7. Lawson Aday received $1,000.00 for the option agreement and $1,000.00 for a renewal of the same.

8. The option agreement was not exercised nor was any sale made to Ronald Case, Trustee, within three hundred sixty (360) days from March 7, 1969.

9. After the option agreement had expired J. C. Martin and James W. Johnson sold the property to B. T. M. Enterprises, Inc., on March 24, 1970, for the sum of $135,000.00.

10. There were no negotiations between Lawson Aday as Real Estate Broker and J. C. Martin and James W. Johnson as Sellers in connection with the sale made on March 24, 1970.

11. The letter agreement which was given to Lawson Aday by J. C. Martin and James W. Johnson related solely to the option agreement dated March 7, 1969, and there was no intention on the part of J. C. Martin and James W. Johnson to give Lawson Aday a listing agreement or pay him a commission on a sale of the property except under the option agreement.

12. J. C. Martin and James W. Johnson refused to pay Lawson Aday a 6% commission on the sale to B. T. M. Enterprises, Inc. which was made on March 24, 1970.

13. B. T. M. Enterprises, Inc., was the undisclosed principal for Ronald Case, Trustee, however J. C. Martin and James W. Johnson did not become aware of such fact until after the March 24, 1970, sale was consummated.

## CONCLUSIONS OF LAW

1. The option agreement between J. C. Martin, M. D. and James W. Johnson as Sellers and Ronald Case, Trustee, as purchaser dated March 7, 1969, expired by its own terms three hundred sixty (360) days thereafter.

2. The letter agreement written by J. C. Martin, M. D. and James W. Johnson to Lawson Aday related only to the option agreement and became unenforcable upon the expiration of the option agreement.

3. Lawson Aday was not entitled to a 6% commission on the sale from J. C. Martin, M. D. and James W. Johnson to B. T. M. Enterprises, Inc. on March 24, 1970."

■ Appellant does not specifically complain of any of the thirteen findings of fact made by the trial court. His point of error apparently relates only to conclusions of law numbers 2 and 3. Appellant states

that there are no facts in dispute except the intention of the parties when the letter agreement was given. The letter referred to is quoted in full under finding of fact number 6 hereinabove set out. Appellant contends that the letter agreement, as a matter of law, obligated appellees to pay him a 6% commission of the selling price when they sold the property to his alleged "prospective purchaser." The trial court did not agree with appellant's stated contention and held that the letter agreement dated March 10, 1969 related solely to the option contract dated March 7, 1969. The option agreement undisputedly expired 21 days prior to the actual sale of the property by appellees to B. T. M. Enterprises, Inc. for $135,000.00, which price was $25,000.00 more than that under the option contract.

We agree with the findings and conclusions of the trial court and affirm the judgment.

In City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. Sup.1968), the Court held in part:

"It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the Court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex. Sup.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). See generally: 3 Williston on Contracts § 610 (1936); Restatement of the Law of Contracts § 230 (1932). Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. As said in the Restatement, § 230, supra, '(the) stand-

ard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean. . . . '"

In Board of Ins. Com'rs v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803, 809 (1951), our Supreme Court held in part as follows:

". . . . It is a generally accepted rule of contracts that 'Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.' 17 C.J.S. Contracts § 298, p. 714. The rule is followed by the courts of this state. Miles v. Briggs et al., Tex. Civ.App., 18 S.W.2d 850 (writ dism.); Veal et al. v. Thomason, 138 Tex. 341, 159 S.W.2d 472; 10 Tex.Jur., p. 286, sec. 166. . . . "

We do not believe that the letter agreement of March 10, 1969 is ambiguous. It clearly relates to and refers to the option agreement. When the option agreement was not exercised before its termination date the letter agreement of March 10, 1969 expired along with it and appellant was not entitled to a commission based upon such instruments on the sale which was made after such expiration date.

However, even if we should hold that the letter agreement was ambiguous, our conclusion—that appellant was not entitled to a commission—would be the same. The trial court heard the testimony of appellant Lawson C. Aday and James W. Johnson, one of the sellers, and had before it the letter agreement and option contract involved. The background and circum-

stances surrounding the entire transaction appear to have been fully developed. In connection with the written instruments herein involved the testimony, including portions of that given by Mr. Aday, strongly tended to show that the letter agreement related solely to the option contract, and such testimony, even if there was ambiguity in the letter agreement, was legally and factually sufficient to support the findings of the trial court. The conclusions of the trial court were correct in any event and a judgment denying a recovery to appellant was proper. Appellant's point is overruled.

The judgment of the trial court is affirmed.