**ASGROW SEED COMPANY, Appellant,**

v.

**J. R. GULICK et al., Appellees.**

No. 14601.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 13, 1967.

James V. Graves, San Antonio, Wilbur S. Legg, Chicago, Ill., for appellant.

Petry & Fitzpatrick, Carrizo Springs, James N. Martin, San Antonio, for appellees.

KLINGEMAN, Justice.

This suit was instituted by appellant, Asgrow Seed Company, (plaintiff and cross-defendant in the trial court) against J. R. Gulick and Roy Gulick (defendants and cross-plaintiffs in the trial court) for the purchase price of six pounds of okra seed, 900 pounds of Double T hybrid sorghum seed, and 5,400 pounds of AMAK R–12 hybrid sorghum seed, together with interest and attorney's fees. Appellees answered such suit by a general denial and counterclaim, averring that the AMAK R–12 seed was purchased upon an oral contract, and it was warranted and represented to be hybrid sorghum AMAK R–12 seed, fit and proper to be sown, and in all respects first-class and true to name, and would outproduce all other grain on the market, producing approximately 7,000 pounds per acre; that said seed was planted on 767 acres of land, and when the grain grown from that seed began maturing, appellees discovered that it was not of the hybrid sorghum AMAK R–12 variety as purchased and warranted, but was other varieties, having white heads, small immature seeds, and/or loose non-compact ragged heads, and that by reason thereof appellees obtained only about 1600 pounds of grain per acre, whereas they should have obtained approximately 7,000 pounds per acre, to their damage in the sum of $71,238.96. Appellant denied that such seed was purchased upon an oral contract, and alleged that it was purchased simultaneously with the okra and Double T sorghum seed, pursuant to a written contract, which written contract contained certain limited warranty provisions, and further that if appellees suffered any diminished yield in the crop it was proximately caused by their own negligence and factors other than those complained of by appellees.

Trial was to a jury with five special issues being submitted, in response to which the jury found: (1) That the 5400 pounds of seed delivered to appellees was not 99% pure hybrid sorghum AMAK R–12 seed. (2) That appellees would have obtained additional grain if such seed had been 99% pure AMAK R–12 seed. (3) That the total value of such additional grain would have been $42,740.55. (4) That appellees should have known, by reason of their previous purchases of seed from appellant, that appellant limited its liability in accordance with the terms and conditions set forth in its shipping instructions, invoices, and on the seed containers. (5) That the sum of $450.00 would be a reasonable attorney's fee for the filing and prosecution of appellant's suit against appellees.

Appellant moved for judgment based upon the verdict, and in the alternative to disregard the jury's answers to Questions 1, 2 and 3, and for judgment upon the answers to Questions 4 and 5. Appellees moved to disregard the jury's answers to Questions 4 and 5, and for judgment based upon the jury's answers to the first three special issues. The trial court denied appellant's motion for judgment, granted appellees' motion, and entered judgment for appellees in the sum of $42,740.55, against which the court applied as an offset the sum of $1,354.75, being the purchase price of the three varieties of seed, and interest to date of judgment.

Although appellant presents twenty-six points of error, the principal issues to be determined on appeal are: (1) Are the warranty limitations provided for in the shipping instructions, invoices, and on the seed containers binding on the grower? (2) Does the jury's finding to Question No. 1 render appellant liable for appellees' crop

loss and, if so, is there any probative evidence to support such finding? (3) Did the trial court err in refusing to render judgment for appellant on the jury's finding to Question No. 4? (4) Did the trial court err in refusing to submit to the jury appellant's requested special issues presenting certain defenses it had pleaded and raised by the evidence, and in submitting Question No. 3 in the form submitted, over appellant's objection? (5) Did the trial court err in disregarding the jury's answer to Question No. 5 concerning attorney's fees?

Appellant contends that by virtue of the jury's answer to Question No. 4 it is entitled to a take-nothing judgment on the cross-action of appellees, and presents two points of error in this regard: (1) "The trial court erred in failing to render judgment for cross-defendant on the jury's affirmative finding to Question No. 4, which reads as follows, 'Do you find from a preponderance of the evidence that the Gulicks, at the time of purchasing the 5400 pounds of seed in question, should have known by reason of their previous purchases of seed from Asgrow that Asgrow limited its liability in accordance with the terms and conditions set forth in its shipping instructions, invoices, and on the seed containers?', because such finding, under the pleadings and evidence, constituted a complete defense to cross-plaintiffs' counterclaim." (2) "The trial court erred in granting cross-plaintiffs' motion for judgment, because under the pleadings, evidence and findings of the jury cross-plaintiffs were bound by the terms and conditions of the limited warranty set forth in the shipping instructions, invoice and on the seed containers."

The shipping instructions, invoice, and seed containers contain the identical limited liability provision.[1] The shipping instructions and invoice contain further provisions for limitation of warranty.[2] Appellant contends that the purchase of seed was made upon a written contract which included such limited warranty and liability provisions. Appelleees assert that there were no pleadings to support the submission of Special Issue No. 4 to the jury; that there was no evidence to support the jury's finding to such special issue; that the contract of purchase was an oral contract, and that such oral contract did not embrace or include the limited liability and warranty provisions above referred to; and that such oral contract was established as a matter of law.

While appellant's original petition is somewhat ambiguous, such petition specifically refers to the shipping instructions, and copies thereof are attached to the petition and made a part thereof for all purposes. The shipping instructions contain such warranty limitations, and the petition alleges that appellees entered into such shipping instructions and are bound by the provisions thereof. Appellant's first amended answer to appellees' counterclaim specifically alleges a written contract between appellant and appellees and sets forth the terms and provisions of said warranty limitation. We find, from an examination of appellant's pleadings and exhibits attached thereto, that its suit was based upon a written contract. Such attached exhibits (shipping instructions) supply any deficiency in the allegations of appellant's petition. Rule 59, Texas Rules of Civil Procedure; 13 Tex.Jur.2d Contracts § 370 (1960).

1. "Asgrow warrants that the seeds, bulbs and plants it sells will be, at the time of delivery, as described on the container within recognized tolerances. Asgrow gives no other or further warranty, express or implied. Asgrow limits its liability on the foregoing warranty and its liability by reason of any other cause whatsoever to the amount of the purchase price of such seeds, bulbs and plants."

2. "Neither Asgrow, the manufacturer, processor, jobber nor seller hereof, makes any representations or warranties express or implied with respect to results from use or handling of this material whether or not used in accordance with directions. The buyer assumes all risks incident to the use of this material."

The record discloses that appellees went to appellant's place of business in San Antonio, Texas, on March 9, 1964, at which time they purchased 6 pounds of okra seed, 900 pounds of Double T seed (another variety of grain sorghum seed), and 5400 pounds of AMAK R–12 seed, for a purchase price of $1,202.70, which consideration was deferred. The shipping instructions (order) for the okra seed and Double T seed, which contained the limitation of warranty and liability provisions hereinbefore set forth, was dated March 9, 1964, and was signed by J. R. Gulick. The shipping instructions for the AMAK R–12 seed, containing the same limitation of warranty and liability provisions, was dated March 10, 1964, and was signed by Mrs. J. R. Gulick. An invoice dated March 14, 1964, covering all the seed purchased was mailed and delivered to J. R. Gulick, together with a note for the purchase price of the seed and a letter pertaining thereto. This invoice contained the same limitation of warranty and liability provisions as the shipping instructions, and described and priced all the seed purchased. In lieu of the note, a trade acceptance, payable on August 1, 1964, which incorporated the invoice, was signed by J. R. Gulick on May 20, 1964. All of the seed involved in this suit were delivered in sealed bags, and on each of such bags was printed the warranty limitations set forth in Footnote 1.

■ Appellant contends that the two shipping instructions, the invoice, and the trade acceptance, being essential parts of the transaction, together form the contract, even though some bear different dates and were executed at different times and some were unsigned. In support of its contention, appellant relies on Board of Ins. Commissioners v. Great Southern Life Ins. Co., 239 S.W.2d 803 (Tex.Sup.1951); Pacific Mutual Life Ins. Co. v. Westglen Park, Inc., 160 Tex. 1, 325 S.W.2d 113 (1959); and Carpenter v. Southern Properties, 299 S.W. 440 (Tex.Civ.App.–Dallas 1927, writ ref'd). The Supreme Court in Board of Insurance Commissioners v. Great Southern Life Ins. Co., supra, stated: "It is a generally accepted rule of contracts that 'Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.' 17 C.J.S., Contracts, § 298, p. 714." See also 17A C.J.S. Contracts § 298. In Hurlbut v. Lyons, 405 S.W.2d 398, (Tex.Civ.App.–El Paso 1966, writ dism'd) a venue action, certain delivery tickets were signed but did not specify any place of payment. They were subsequently supplemented by unsigned invoices providing for a place of payment. The Court in holding that the unsigned invoices were a part of the written contract stated: "Although these invoices were not signed, we believe that they were an integral part of the transaction, and this for several reasons. First, they related to and followed the delivery tickets and set forth the amount appellee maintained that appellant owed for the use of this equipment. The delivery tickets by themselves merely set forth that the equipment was delivered. The invoices set forth the charges and as such, we believe were legally inseparable from and inter-dependent on the delivery tickets. Therefore, although the invoices were not signed, they were a part of the transaction, and when issued to and received and accepted by the appellant, became merged with the signed delivery tickets." See also Newman v. Texas Farm Products Company, 346 S.W.2d 151 (Tex. Civ.App.–Beaumont, no writ).

Appellees strongly urge that the seed was purchased under an oral contract through appellant's agent, and that the limited liability and warranty provisions contained in the shipping instructions, invoice, and seed containers form no part of such oral contract and could have no effect upon it. In support of such contention they rely chiefly on the cases of Sugarland Industries, Inc. v. Falco, 360 S.W.2d 806, writ ref'd n.r.e; and Longino v. Thompson (Tex. Civ.App.), 209 S.W. 202, writ ref'd.

In Sugarland Industries. Inc. v. Falco certain seed were sold to Falco, and the warranty limitation provision was contained on the tags attached to the bags of seed delivered. The Court held that the record was without dispute that the sale was made by Marshall, an agent for Sugarland, on an oral contract that Marshall made with plaintiff, to the effect that the seed had a germination rate of 80%, and that the contract was made when the parties made this oral agreement; that there was no evidence that Marshall advised the plaintiff at such time that the tags attached to the seed containers would contain a no warranty clause, and that under this fact situation the no warranty clause printed on the tags was no part of the contract between the parties.

Longino v. Thompson, supra, was a suit by a grower for crop damages arising out of failure to furnish seed of the variety ordered. Such seed was ordered by telephone, and the grower contended that the seed company represented the seed to be June Pink tomato seed and that on the basis of such representation he purchased such seed; and when the seed were delivered they were accompanied by printed representations to the effect that they were June Pink tomato seed, when in actuality they were not. The seed company contended that one of its regular billheads accompanied the shipment, on which billhead there was contained a no-warranty clause, and that said no-warranty clause was part of the contract. The grower denied having read the notice on the bills. The Court sustained an instructed verdict of the trial court for the seed company on the basis that the plaintiff had not furnished any basis for establishing his damages, but in their opinion, the Court of Civil Appeals stated, that the instructed verdict could not be sustained on the theory that the evidence conclusively shows that the sale of seed was made upon an implied agreement that no warranty should result therefrom, and stated: "The contracts did not consist of a mail order, and the shipment of the seed accompanied by a notice of nonwarranty, and request to return the seed if unwilling to purchase on such terms, but were made over the telephone, and to say the least the notice on the bills could not affect such contract, unless it came to the notice of appellant prior to the planting of the seed." The Court by its language indicates that even on an oral contract, if the grower had notice of the nonwarranty prior to the planting of the seed that it would be binding on him.

Appellees assert that there were no pleadings to support the submission of Question No. 4 to the jury, and no evidence to support the jury's answer to such question. Appellant contends that, having specifically plead the limitation of warranty and liability provisions, it was entitled to show any means by which the appellees did or should have acquired knowledge of the limited liability provisions, and further contend that it specifically plead that the limitations of warranty should have been known to appellees by reason of the custom of the trade. There was testimony by appellees themselves that they had previously purchased AMAK R–12 seed from appellant over a period of years, which testimony was substantiated by an employee of appellant, and there was testimony that the same limitation of warranty and liability had been on the shipping instructions and invoices delivered to appellees on the previous purchases. There also was testimony that placing the limited warranty provisions on the shipping instructions, invoices and bags is a custom in the seed industry, and that said custom is well known to the farmers.

■ A valid usage or custom concerning the subject matter of a contract, knowledge of which may be imputed to the parties, is, according to a general rule, incorporated into the contract by implication. 58 Tex.Jur.2d, Usages and Customs, § 13 (1964); Dwyer v. City of Brenham, 70 Tex. 30, 7 S.W. 598 (1888). The jury's answer

to Special Issue No. 4 is sufficiently supported by the pleadings and the evidence.

We believe the case of Pyle v. Eastern Seed Co., 145 Tex. 385, 198 S.W.2d 562 (1946), is controlling on our decision in the case before us. In *Pyle*, the purchaser brought suit against the seller alleging that he ordered a certain variety of onion seed, that the seed delivered was not the variety ordered, and that by virtue thereof he suffered a loss in the value of his crop. The jury found: (1) That seller represented the seed to be babosa onion seed. (2) That the buyer relied on such representation. (3) That the seed sold was not babosa onion seed. (4) That if the seed had been as represented the buyer would have raised a crop of babosa onions, and such crop would have had a market value of $5,200. (5) That the buyer did not have notice of the contents of the non-warranty clause printed in the body of the purchase agreement before the seed was planted. (6) That the buyer did not have notice of the contents of the non-warranty clause printed on each of the sacks of onion seed before planting. The order sheet contained the following non-warranty provisions: "Eastern Seed Co. gives no warranty, express or implied, as to description, purity, productivity, or any other matter of any seed we may send out, and we will not be in any way responsible for the crop." The Supreme Court held that parties who sign and thereby enter into a written contract are bound by its provisions, and where the contract of sale of babosa onion seeds expressly states that said seed were not warranted as to description, purity, or productivity, and the nonwarranty clause was also printed on the sacks in which the seed were delivered, proof that the seed delivered were of a different variety other than that contracted for did not entitle the buyer to recover for breach of warranty or fraud.

Dutch Mill Gardens v. J. J. Grullemans & Sons, N.V. of Lisse, Holland, 238 S.W.2d 232 (Tex.Civ.App.–Galveston, 1951, writ ref'd), was a suit brought by the seller for the purchase price of certain bulbs. Buyer defended on the grounds that the bulbs were worthless and did not produce. The written order upon which the bulbs were delivered contained a nonwarranty clause to the effect that "No warranty is given for the results of planting, forcing, or flowering of any bulbs and roots." The Court in upholding a judgment for the seller stated that the only evidence before the Court "on such claimed issue of whether or not the bulbs would sprout, or were useless, was the express subject of the written-contract between the parties, by which the appellee (seller) * * * was plainly relieved of responsibility for the precise results such evidence alone tended to prove;" and that the rule barring the buyer is set forth in Pyle v. Eastern Seed Co., supra.

Hall v. Mosteller, 245 S.W.2d 338, (Tex. Civ.App.–Austin 1952, writ ref'd n.r.e.), was a suit by a melon grower seeking to recover the market value of a watermelon crop. The invoice which was for 50 pounds of Black Diamond Watermelon Seed, had written across the face thereof "Guaranteed to be Black Diamond," in pen, and contained a printed non-warranty clause as follows: "The CAPITOL SEED HOUSE gives no warranty, expressed or implied, as to description, quality, productiveness, or any other matter of any seeds, bulbs, plants it sells, and will not be responsible for the crop. If the goods are not accepted on these terms they are to be returned immediately." Such invoice, which was introduced in evidence and is reproduced in the opinion of the Court of Civil Appeals, does not appear to have the signature of the purchaser thereon, so far as we can ascertain. The buyer contended that the seeds shipped were not Black Diamond Watermelon Seeds, and did not produce a crop of Black Diamond watermelons, which would have been worth $13,550, but produced a crop of varied and assorted pie

melons of no value. The Court in its opinion refers to such invoice as the written contract between the parties, and denied any recovery for the grower, holding that the penned provision on the invoice did not supersede the printed non-warranty provisions, and stating that the case of Pyle v. Eastern Seed Co., supra, was controlling in the case; and that buyer's contention that seller was "liable for consequential damages is not sustainable because the only measure of damages, other than for recovery of the cost of the seed, would of necessity be the value of the crop, liability for which appellee (seller) had contracted against."

█ In view of the jury's affirmative answer to Special Issue No. 4, it is our opinion that appellant's points of error Nos. 12 and 13 should be sustained, and that the trial court erred in failing to render judgment for appellant as to appellees' counterclaim, and was in error in granting appellees' motion for judgment.

The judgment of the trial court in favor of appellees on their counterclaim for crop loss is reversed. In its judgment, the trial court applied as an offset to said award to appellees the amount of the purchase price of the three varieties of seed purchased, said amount being adjudicated to appellant. Since appellant relies upon a written contract containing a limitation of warranty, limiting its liability to the amount of the purchase price of the seed, under the jury's finding it is not entitled to recover for the purchase price of the AMAK R–12 seed. Appellant is entitled to recover for the purchase price of the okra seed and the Double T sorghum seed, which aggregates $176.70, and which has not been paid, and judgment is here rendered for appellant in this sum, with interest at the rate of six per cent per annum from March 14, 1964, to date. Because of the absence of sufficient proof of the reasonableness of attorney's fees for such recovery, attorney's fees are disallowed.