PAGE AIRWAYS, INC., Appellant,

v.

ASSOCIATED RADIO SERVICE COMPANY, Appellee.

ASSOCIATED PAGE INTERIORS, INC., Appellant,

v.

ASSOCIATED RADIO SERVICE COMPANY, Appellee.

Nos. 15509, 15528.

Court of Civil Appeals of Texas, San Antonio.

Sept. 29, 1976.

Rehearing Denied Jan. 5, 1977.

Cox, Smith, Smith, Hale & Guenther, Eugene B. Labay, San Antonio, for Page Airways, Inc.

Davis, Rigely & Fagan, Inc., Wayne I. Fagan, San Antonio, for Associated Page Interiors, Inc.

Matthews & Thorp, Dallas, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, for appellee.

KLINGEMAN, Justice.

This is a consolidated appeal of Cause No. 15528 *(Associated Page Interiors, Inc. v. Associated Radio Service Company)* and Cause No. 15509 *(Page Airways, Inc. v. Associated Radio Service Company)*. Both relate to proceedings had in Cause No. 74–CI–5899, District Court of Bexar County.

Cause No. 15528 is an appeal by Associated Page Interiors, Inc., hereinafter called "API," from an adverse judgment entered against it in favor of Associated Radio Service Company, hereinafter called "Radio," in the amount of $194,129.30 in a suit on a promissory note executed by API, payable to Radio. Trial was to a jury, but at the close of the evidence, the trial court withdrew the case from the jury and entered judgment for Radio.

Cause No. 15509 is an appeal by Page Airways, Inc., hereinafter called "Page," in which Page complains of the action of the trial court in granting Radio motion to strike the intervention of Page from said suit, and also the final judgment entered in said cause in favor of Radio against API.

In 1968, Radio and Howard, Draker, Woltersdorf & Co. (later changed to API), commenced a business venture with Page and Page Gulfstream, Inc., a subsidiary of Page. Page acted as the authorized distributor for Grumman Aerospace, Inc. in the sale of large executive aircrafts. Radio would contract to furnish and install the radio and electronic equipment, and API would provide and install interior furniture and accessories.

During the first year, API experienced financial difficulties. Since API was a part of the business venture, it was decided that it was to the best interest of API, Radio, and Page to provide financial aid to API.[1]

The record reveals that API executed two promissory notes in the amount of $90,000.00 each, one to Radio, and one to Page, both dated October 2, 1969, both payable on or before November 30, 1969.[2] Both notes provided for interest from date to maturity at the rate of nine per cent per annum, and after maturity at the highest legal rate per annum. Both notes provided on their face that each is subject to a Loan Agreement between API, Radio, and Page dated October 2, 1969.

The Loan Agreement referred to in both notes is executed by API as Borrower and Page and Radio as Lenders. It recites that Borrower desires to borrow from Radio and Page as Lenders the sum of $180,000.00, and that the Lenders are willing to make such loan upon the terms therein set forth. Under such agreement, Page and Radio are to advance the sum of $90,000.00 each to API, and API is to give two notes, as hereinbefore described, in the amount of $90,000.00 each, one payable to Radio, and one payable to Page.

The agreement also provides:

(a) Initially, said notes shall be due on or before November 30, 1969.

(b) Such notes shall initially bear interest at the rate of nine per cent per annum, and if and when renewed, the interest shall be at the prime rate in Dallas, Texas, plus one-half of one per cent.

(c) Each of such notes shall be renewed November 30, 1969 on a repayment schedule consistent with API's financial condition and its anticipated or projected cash flow.

(d) Any payment made by API upon the obligation of $180,000.00 shall be initially paid sixty per cent to Radio and forty per cent to Page, but upon maturity any payments shall be received and applied equally by Page and Radio.

1. In September 1969, API's stock ownership was basically evenly divided between the three groups—one-third by Page, one-third by the Radio group, and one-third by Mr. Howard (Howard, Draker, Woltersdorf & Co.).

2. Such notes and Loan Agreement were actually executed by Howard, Draker, Woltersdorf & Co., which was later changed to Associated Page Interiors, Inc., and such entity will be referred to in this opinion as API.

(e) Past due principal and interest on each note shall bear interest at the highest legal rate.

On November 21, 1973, Radio filed suit in the 95th Judicial District Court of Dallas County, Texas against API, Page Gulfstream, Inc., Page, and Ross C. Chapin, asserting two causes of action: (1) a suit on API's promissory note to Radio, alleging default thereunder; (2) a suit for conversion against Page Gulfstream, Page, and Chapin for wrongful appropriation and conversion of the property of API.

API subsequently filed a plea of privilege asking that such suit be transferred to Bexar County, Texas, the place of its residence. Defendants, Page and Page Gulfstream, Inc., filed a motion to sever, alleging that Radio's petition set up two causes of action, one a suit on a promissory note against API, and one for conversion against Page and Page Gulfstream, and asks that Radio's alleged cause of action against Page and Page Gulfstream be severed from the other cause of action in said case.

The Dallas Court thereafter granted API's plea of privilege to Radio's cause of action against it on the note and transferred the same to Bexar County, Texas. The Dallas Court also sustained Page's and Page Gulfstream's motion to sever the claim for conversion, and this portion of the case was retained by the Dallas Court.

On January 7, 1975, Page filed a petition in intervention in the Bexar County case, seeking a declaratory judgment that Page be paid upon the same basis as Radio and that payments be applied equally to Page and Radio. An amended plea in intervention was thereafter filed, seeking additional affirmative recovery against API on the $90,000.00 promissory note given by API to Page. Page asserted that it had an interest in the matter in controversy and was a necessary and indispensable party because it had a promissory note identical to Radio's, both of which were subject to the Loan Agreement; that it is also a stockholder and creditor of API; and that any judgment rendered would necessarily involve the construction and interpretation of the notes and Loan Agreement and would adjudicate, determine, prejudice, or be binding on the interests of Page.

On April 9, 1975, five days before the case was to go to trial, Radio filed an unverified motion to strike Page's intervention, and on April 11, 1975, the trial court granted Radio's motion to strike and such intervention was struck from said cause and dismissed without prejudice.

The trial to a jury commenced on April 14, 1975, and on April 17, 1975, the court withdrew the case from the jury and judgment was subsequently entered that Radio recover from API the sum of $194,129.30, interest at the rate of ten per cent per annum from and after April 18, 1975, and all costs of this suit.

Page and API assert similar points of error and they will be discussed together herein. For the purpose of this opinion, such points of error will be discussed under two general categories. (1) Points of error asserting that the trial court erred in granting Radio's motion to strike Page's intervention and proceeding to trial without the presence of Page; (2) Points of error pertaining to the merits.

### Points of Error Pertaining to Page's Intervention

Page, by six points of error, asserts that the trial court erred in granting Radio's motions to strike the intervention of Page because (1) Page is a necessary and indispensable party to the proceedings; (2) Page's petition in intervention asserts both legal and equitable grounds justifying such intervention; (3) Radio did not establish sufficient cause justifying the court's action; (4) Radio waived such plea by allowing Page to intervene and conduct discovery proceedings and participate in depositions without objections; (5) and (6) the trial court erred in granting Radio's motions to strike on account of the pendency of Cause No. 73–8757–D in the 95th Judicial District Court of Dallas County, Texas, because (a) Radio failed to file a proper verified plea in abatement as required by the

Texas Rules of Civil Procedure; (b) Radio failed to plead and prove that such suit involves the same subject matter.

Although not specifically assigned as a point of error, it is clear from Page's brief that it also contends that the court erred in granting Radio's motion to strike because such motion to strike was not filed until five days prior to the trial and was granted two days later.[3]

API also asserts these points of error, but also emphasizes that the effect of striking Page's intervention and proceeding to trial without Page's presence was to subject API to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of Page's claimed interest in violation of Rule 39(a)(2)(ii), Tex.R.Civ.P.

By counterpoints, Radio asserts that the trial court did not err in dismissing Page's petition in intervention because (1) the trial court did not have jurisdiction over the subject matter involved in said intervention because the 95th Judicial District Court of Dallas County, Texas had previously acquired exclusive jurisdiction over same; (2) Page is estopped from asserting it is an indispensable party because of prior inconsistent allegations and statements; (3) the action of the trial court complied with the objectives, intents, and purposes of the Rules of Civil Procedure; (4) Radio did not waive its motion to strike by allowing Page to intervene, conduct discovery, and participate in depositions, without objections; (5) Radio's motion to strike was filed with leave of the court and was not contrary to any pre-trial order; (6) Radio's motion to strike did not need to be verified, and Page waived such lack of verification before the trial court ruled on it; (7) Radio did plead and prove that Cause No. 75–8757–D, pending on the 95th Judicial District Court of Dallas County, Texas, involved the same subject matter.

■ A basic point of dispute is as to the subject matter of the Dallas suit and the San Antonio suit, with Radio contending that the subject matter is the same, the note and the attending Loan Agreement, and Page contending that the Dallas suit against it is only concerned with Page's alleged conversion of API's assets. Radio's original petition, filed in the District Court of Dallas County, Texas, set up two causes of action: (1) a suit against API on its promissory note to Radio; (2) a suit against Page, Page Gulfstream, and Chapin for wrongful appropriation and conversion of the property of API. The only portion of the suit which was transferred to Bexar County, Texas was the suit on the note against API after the filing of a plea of privilege by API. The other portion of such suit (conversion and wrongful appropriation by Page et al. of property of API) was retained by the Dallas Court and is still pending in such Court.

We do not regard the subject matter of the pending suit in Dallas and the suit tried in San Antonio, now before us, as identical and the same.

Radio's next contention is that Page is estopped from asserting it is an indispensable party because of prior inconsistent pleadings and assertions. Such contention is based upon allegations in Page's motion to sever, filed in Dallas, which, after setting forth that Radio's petition alleges two causes of action, one against API on a promissory note, and one against Page for alleged conversion, alleges that the causes of action alleged against Page and Page Gulfstream do not arise out of or are incident to, or have common questions of law and fact with, the main suit for debt against API.

■ In support of its contention, Radio relies on the line of cases which set down a general rule that a party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding where the latter position is to the prejudice of the adverse party and the parties and the questions are the same. See *Smith v. Chipley*, 118 Tex. 415, 16 S.W.2d 269

---

3. See *Susanoil, Inc. v. Continental Oil Company*, 516 S.W.2d 260 (Tex.Civ.App.—San Antonio 1973).

(Tex.Com.App.1929).[4] We do not regard such allegations and statements, when taken in the context with the situation existing in the Dallas Court at that time, as violating such rule. Insofar as the record before us reflects, API's note to Page was not in default and had not been matured at such time. Under the record, we have concluded that the suit for conversion against Page and the suit for debt against API are different causes of action; they are not based primarily on the same original transaction; and the parties and the questions are not the same.

■ It is well established in Texas that where two or more instruments executed contemporaneously or at different times pertain to the same transaction, the instruments will be read together even though they do not expressly refer to each other. *Board of Ins. Com'rs v. Great Southern Life Ins. Co.,* 150 Tex. 258, 239 S.W.2d 803 (1951); *Pendleton Green Associates v. Anchor Savings Bank,* 520 S.W.2d 579 (Tex. Civ.App.—Corpus Christi 1975); *Texas State Bank of Austin v. Sharp,* 506 S.W.2d 761 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.); *Mann v. Perry,* 486 S.W.2d 853, 859 (Tex.Civ.App.—Houston [14th Dist.] 1972); *Asgrow Seed Company v. Gulick,* 420 S.W.2d 438 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.). In the case before us the instruments specifically refer to each other, and it is established that where two or more writings are connected by reference one to another, or simultaneously made with respect to the same subject matter and as a part of the same transaction, they are to be taken and construed together as one contract. *Mann v. Perry, supra* ; *Miles v. Briggs,* 18 S.W.2d 850 (Tex.Civ. App.—San Antonio 1929, writ dism'd); *Sides v. Knox,* 203 S.W. 65 (Tex.Civ.App.— Texarkana 1918, writ ref'd).

■ Rule 39, Tex.R.Civ.P., Joinder of Persons Needed for Just Adjudication, reads as follows:[5]

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. [(b), (c), and (d) not here pertinent.]

We have concluded that Page should have been a party to the herein proceedings under the terms and provisions of Rule 39, Tex.R.Civ.P., for the reason that Page claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in his absence may ". . . (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons, already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

It is clear from the record before us that the note involved in the herein suit is identical in terms and provisions with another note given by API to Page, both of which notes state on their face that the note is subject to a Loan Agreement between API, Radio, and Page. It is also clear that both notes were given as a part of a business venture involving Page, Radio, and API. The Loan Agreement referred to in the notes is executed by Page, Radio, and API and creates joint rights and obligations

---

4. This contention is not applicable to API because the statements or allegations complained of were made by Page and not by API.

5. This amendment was effective on January 1, 1971 and was applicable during all relevant times herein.

among all of the parties, including how such notes are repayable, how they are to be extended or matured, and other rights which must be exercised jointly. The Loan Agreement specifically provides that any payments made by API on such notes are to be paid to Radio and Page in certain proportions, culminating in providing that on and after maturity any payments made by API shall be received and applied equally by Radio and Page.

It is clear that Radio and Page were joint lenders under the terms of the Loan Agreement and were, in effect, joint or copayees. In *Hinojosa v. Love,* 496 S.W.2d 224 (Tex. Civ.App.—Corpus Christi 1973, no writ), which was decided after the effective date of Rule 39, as amended, the plaintiff brought suit against the maker on a promissory note and obtained a judgment in default but failed to join a copayee. The court of civil appeals held that the copayee was an indispensable party, citing both Section 3.116 of the Uniform Commercial Code and Rule 39, Tex.R.Civ.P., as amended, in support of its action. Irrespective of whether or not Page was an indispensable party, it was certainly a party who should have been joined under the provisions of Rule 39, Tex.R.Civ.P., as amended.

In a recent case, *Jennings v. SRP,* 521 S.W.2d 326 (Tex.Civ.App.—Corpus Christi 1975, no writ), decided after the effective date of Rule 39, as amended, the Court stated:

> Rule 39, Texas Rules of Civil Procedure, requires that persons having a joint interest shall be made parties and be joined as plaintiffs and defendants. The term 'joint interest' means joined together in interest, a united interest or an interest shared in common.

We are familiar with the case of *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200 (Tex.1974), which contains a rather full discussion of new Rule 39.[6] The Court pointed out that contrary to the emphasis under Rule 39 before it was amended, today's concern is less that of the jurisdiction of a court to proceed, and is more of a question of whether the court ought to proceed with those who are present. Such opinion cites a U.S. Supreme Court decision under its amended Rule 19, and states that one of the things such Court took under consideration in holding that an absent party was not jurisdictionally indispensable was the fact that the case had actually been tried as to those present, and there was no objection at the trial level concerning the nonjoinder of a party. In our case, the nonjoined party, Page, asserted that it was a necessary and indispensable party and filed an intervention in which it alleged that it had an interest in the subject matter and that any judgment rendered would necessarily involve the construction and interpretation of the note and the joint Loan Agreement and affect Page's legal and equitable rights. We do not have the problem here involved of a person who cannot be made a party, as covered by subsection (b) of Rule 39, but a situation where Page was already before the court seeking to be heard. The cases are factually distinguishable.

In *Cooper,* the Supreme Court pointed out that the title of Rule 39 has been changed from "Necessary Joinder of Parties" to "Joinder of Persons Needed for Just Adjudication." It is our opinion and we hold that, in the case before us, Page is a party whose joinder is needed for just adjudication.

For the reasons hereinbefore set forth, we have concluded that the trial court erred in granting Radio's motion to strike the intervention of Page and proceeding to trial without Page's presence.

### Points of Error Concerning Merits

By a number of points of error, API asserts that the trial court erred in with-

---

6. See *Petroleum Anchor Equipment, Inc. v. Tyra,* 406 S.W.2d 891 (Tex.1966), which contains a good discussion of the old rule. *Tyra* holds that there are only two classes of parties that must be parties to a lawsuit, indispensable parties, and insistible parties, and states that indispensable parties are those parties who have a "joint interest" in the subject matter of the suit.

drawing the case from the jury and entering judgment for Radio because the pleadings and evidence show that genuine issues of fact exist as to whether or not (a) the Radio note was in default; (b) all conditions precedent to recovery on the Radio note had occurred; (c) the Radio note was extended or renewed after November 30, 1969; (d) Radio breached the Loan Agreement dated October 2, 1969 by making a unilateral demand for payment of the Radio note; (e) Radio breached the Loan Agreement by failing to renew or extend the Radio note on a repayment schedule consistent with API's financial condition and its anticipated or projected cash flow; (f) API owed Radio any attorney's fees; (g) Radio and API agreed to a rate of interest in excess of nine per cent per annum after maturity; (h) API agreed and stipulated to a rate of interest in excess of nine per cent per annum.

API also urges that the trial court erred in withdrawing the case from the jury and entering judgment for Radio because the pleadings and evidence show that genuine issues of fact exist as to (a) whether the note was ever renewed; (b) whether the note was ever matured; (c) the defense of waiver of default; (d) the defense of waiver of any claim for a greater rate of interest than nine per cent per annum; (e) the defense of estoppel as to any claim of default; (f) the defense of estoppel as to any claim for a greater rate of interest than nine per cent per annum; (g) whether a confidential or fiduciary relationship existed between the parties. Page also asserts basically these same points of error.

■ Where the case is withdrawn from the jury and judgment rendered by the trial court, a court of appeals is required to view the evidence in the light most favorable to the losing party and to indulge against the court's action every inference that might properly be drawn from the evidence. *Dunagan v. Bushey,* 152 Tex. 630, 263 S.W.2d 148 (1953); *Texas Employers' Ins. Ass'n v. Boecker,* 53 S.W.2d 327 (Tex.Civ.App.—Dallas 1932, writ ref'd).

As hereinbefore noted, the Radio note, the Loan Agreement, and the Page note must be read and construed together. *Board of Ins. Com'rs v. Great Southern Life Ins., supra* ; *Texas State Bank of Austin v. Sharp, supra* ; *Mann v. Perry, supra* ; *Asgrow Seed Co. v. Gulick, supra.*

In support of its contention that there are disputed issues of fact as to whether the note was ever renewed or matured, API points out that the Loan Agreement provides that the note *shall* be renewed on November 30, 1969 on a repayment schedule consistent with API's financial condition and its anticipated or projected cash flow.

It is clear from the record that the note was never renewed on the basis set forth in the Loan Agreement, but the evidence is conflicting as to whether it was renewed, and if so, on what basis. There is testimony that the note was never renewed. There is also testimony that on December 2, 1969 the notes were discussed among the parties and it was agreed to renew the notes; there is also testimony that on this date there was an agreement to renew the notes for ninety days so as to give Mr. Brown, Radio's Comptroller, an opportunity to prepare a current financial report on API so that it could be determined when API might begin to start making payments.

In connection with a question on whether the note was ever matured, the notes provide: "The failure to pay any installment of principal or interest when due or default under the terms of the *loan agreement,* . . . or in the opinion of *Lenders jointly reached*—that the interest of *Lenders* have been or are about to be materially adversely affected, gives the holder the right to mature same and declare the balance due and payable forthwith." [Emphasis ours.] It is seen that this acceleration of maturity clause specifically ties in with the Loan Agreement and also provides for joint action of the lenders. Although API contends that the note was never matured, it asserts that, in any event, there is a disputed issue of fact as to whether the note was matured.

Without here passing on the question of whether the note provided for interest of eighteen per cent per annum after maturity, clearly a higher rate of interest than nine per cent was not payable until after maturity. The question of whether it was matured is clearly material.[7] The evidence is conflicting as to whether it was matured, or if so, when it was matured.

■ The broad concept of estoppel is that one who by his speech or conduct has induced another to act in a particular manner ought not be permitted to adopt an inconsistent position, attitude, or course of conduct and thereby cause loss or injury to the other. *Rancher v. Franks,* 269 S.W.2d 926 (Tex.Civ.App.—Ft. Worth 1954, no writ); *Masterson v. Bouldin,* 151 S.W.2d 301 (Tex. Civ.App.—Eastland 1941, writ ref'd); 22 Tex.Jur.2d *Estoppel* § 1 (1961), p. 660.

■ Waiver or estoppel ordinarily are questions of fact, and if the evidence is conflicting as to such matters, it should be submitted to the jury. *Smith v. Northwest National Bank,* 403 S.W.2d 158 (Tex.Civ. App.—Texarkana 1966, writ ref'd n. r. e.); *Stauffer v. Frost National Bank of San Antonio,* 291 S.W.2d 743 (Tex.Civ.App.— San Antonio 1956, no writ).

■ Whether or not a confidential relationship exists is a question of fact. *MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334 (1944).

Appellant's basic contentions pertaining to these matters of confidential relationship, waiver, or estoppel, are that this is a case where there are interlocking shareholders, directors, and officers; that the parties entering into the original agreement were in a type of joint venture; that it was to their joint interest and benefit to provide financial assistance to API; that the Loan Agreement executed by all the parties, API, Page, and Radio, specifically shows this intent and agreement; and that it is clear under such agreement that the initial short term notes shall be renewed on November 30, 1969 on a repayment schedule consistent with API's financial condition and its anticipated or projected cash flow.

There is evidence that for a long period of time after November 30, 1969 Radio continued to invoice API for interest at the rate of nine per cent per annum, rather than eighteen per cent, and accrued interest on its books at the rate of nine per cent per annum, and that the Comptroller for Radio, Mr. Brown, who was in charge of such invoicing, also prepared API's income tax returns and took an interest deduction on API's returns on an accrual basis at the rate of nine per cent per annum, which continued over a period of years. There is testimony that such Comptroller called the attorney for Radio in 1970 and asked him what interest to post on the note in question, and that such attorney advised him to post interest at the rate of nine per cent per annum. There is testimony that under Internal Revenue Regulations it was too late to amend some of such returns so as to get credit for interest payment at the rate of eighteen per cent per annum, as the judgment provides for.[8]

■ A confidential relationship exists where one party is in fact accustomed to being guided by the judgment or advice of the other, or is justified in placing confidence in the belief that such party will act in its interest. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962). In *Schiller v. Elick,* 150 Tex. 363, 240 S.W.2d 997 (1951), the Court said:

Defendant Elick denies any obligation to or fiduciary relationship with the Schillers. . . . Elick offers considerable proof supporting his contention that this was in fact an arm's length trade and argues it effectively here. Our problem is not to determine who is telling the

---

**7.** The judgment finally entered includes interest at the rate of eighteen per cent per annum.

**8.** API points out that there was not only a close working relationship between API and Radio, but almost a total interdependence of API on Radio because of common directors, shareholders, and officers, plus the fact that the Comptroller for Radio helped supervise the bookkeeping for API and at times filed API tax returns.

truth, but only to determine whether there is any testimony which, if believed, will support the trial court's judgment. Whether or not a fiduciary relationship exists is a question of fact.

██ A confidential relationship may arise not only from a technical fiduciary relationship, but also an informal relationship where one person trusts in and relies upon another, whether the relationship is social, domestic, or personal. *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951).

██ Moreover, the relationship between joint adventurers, like that existing between partners, is fiduciary in character and imposes upon all the participants the obligation of loyalty to their joint concern and of the utmost faith, fairness, and honesty in their dealings with each other. *Fitz-Gerald v. Hull, supra.*

██ The rule of "equitable estoppel" does not rest on the assumption that the promissor has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he be allowed to fail in carrying out that which he has encouraged them to expect. *Longbotham v. Ley,* 47 S.W.2d 1109 (Tex.Civ. App.—Galveston 1932, writ ref'd); *Dickerson v. Colgrove,* 100 U.S. 578, 25 L.Ed. 618. The principle of estoppel by silence arises where a person, who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice. *A. R. Clark Investment Company v. Green,* 375 S.W.2d 425, 435 (Tex.1964); *Burnett v. Atteberry,* 105 Tex. 119, 145 S.W. 582 (1912); *Waggoner v. Dodson,* 96 Tex. 415, 73 S.W. 517 (1903).

██ One of the purposes of estoppel is to prevent one person, by throwing another person off his guard, from obtaining an unfair advantage or from acting inconsistent to the other's disadvantage. So, where

one party by his representations or conduct has induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he will not in a court of justice be permitted to avail himself of that advantage. *Sonfield v. Eversole,* 416 S.W.2d 458 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.); 31 C.J.S. *Estoppel* § 63.

In *MacDonald v. Follett, supra,* the Supreme Court held that evidence of dealings between parties raised a fact issue as to whether there was such a confidential relationship as to impose fiducial duties and obligations on one to the other, and stated:

> Whether or not joint owners of overriding royalty interests sustain relations of trust and confidence toward each other depends upon the facts and surrounding circumstances. They do not sustain that relationship by virtue alone of their being joint owners. Our question then is whether the facts above recited, viewed in the light most favorable to Follett's contention, raise an issue for the jury on the question of the existence of a relation of trust and confidence.

██ We have concluded that under the record there were disputed material issues of fact as to (a) whether the note in question was ever matured; (b) the defense of estoppel as to any claim for a greater rate of interest than nine per cent per annum; (c) whether a confidential or fiduciary relationship existed between the parties. Because of such disputed issues of fact, the trial court erred in taking the case from the jury and granting judgment for Radio.[9]

Under the record, the trial court erred in withdrawing the case from the jury and entering judgment for Radio. We have concluded that the judgment complained of in both Cause No. 15528 and 15509 must be reversed.

Page's plea in intervention is ordered reinstated. The judgment complained of in both Cause No. 15528 and 15509 is reversed

---

**9.** API and Page both have points of error asserting that as a matter of law a take-nothing judgment should have been entered against Radio. We have considered these points of error seeking a rendition and they are overruled.

and remanded to the trial court for a new trial.