DAP 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00488-CV







DAP Financial Services, Inc., Appellant



v.



Temple Western Hills, Inc. and Dell Martin, Appellees







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 143,385-B, HONORABLE RICK MORRIS, JUDGE PRESIDING






 DAP Financial Services sued Temple Western Hills, Inc. and Dell Martin for the
deficiency balance after foreclosure on a real estate lien note. DAP sought recovery from Martin
under a personal guaranty agreement securing the note. Martin raised the affirmative defense of
fraud in the procurement of the guaranty. Upon the jury's finding that Martin's signature on the
personal guaranty had been fraudulently obtained, the trial court rendered a judgment in favor of
DAP against Temple Western Hills and a take-nothing judgment in favor of Martin. DAP appeals
the take-nothing judgment in favor of Martin, alleging that the evidence is factually insufficient
to support the jury's finding that Martin's signature was fraudulently procured. We will affirm
the trial court's judgment.




BACKGROUND


 On May 31, 1989, Texas American Bank (the "Bank") sold Temple Western Hills
two tracts of land from the Bank's inventory of foreclosed properties. As president and sole
stockholder of Temple Western Hills, Martin executed a real estate lien note secured by a deed
of trust in connection with the sale. Temple Western Hills is listed as the maker on the note and
the grantor on the deed of trust.

 During this same transaction, Martin allegedly signed a personal guaranty
agreement on the note. The guaranty is similar in form to the note and deed of trust: "Temple
Western Hills, Inc." appears at the top and the signature line was prepared for Martin's signature. 
However, the signature line was not prepared for Martin's signature as president of the company;
the agreement identifies Temple Western Hills as the customer, with Martin's signature rendering
him liable in his personal capacity as guarantor. Martin testified that the signature appears to be
his, but denied seeing the guaranty agreement among the three or four documents he signed that
day and testified that he would not have signed the agreement had he seen it. Although he is an
experienced businessman and has served as a director of another bank in Temple, Martin admitted
he did not read any of the documents he signed. Martin's files regarding this transaction do not
contain a copy of the guaranty agreement.

 Martin claimed that the Bank's officer who negotiated the transaction, Jim
Cockrell, and the entire Temple banking community knew that Martin never personally guaranteed
notes for Temple Western Hills. (1) Martin had known Cockrell for three or four years before the
transaction and considered Cockrell a friend. Martin and Cockrell had previously negotiated
many notes, deeds, and real estate transactions together.

 As additional evidence that the guaranty may not have been among the documents
Cockrell presented for his signature, Martin observed that on both the original note and deed of
trust the typed date of March 31, 1989 had been changed to May 31, 1989, requiring Martin to
initial these changes. The guaranty contains no written changes and bears the date May 31, 1989. 
Martin testified that his address on the guaranty agreement is incorrect and that he would have
corrected the error had he noticed it. The Bank produced from its file a copy of Martin's personal
financial statement dated March 31, 1989. Martin admitted that he provided the financial
statement, but indicated that he might have given the statement in connection with another
transaction.

 Shortly after this transaction, the Bank was declared insolvent and its assets seized
by the Federal Deposit Insurance Corporation ("FDIC"). When Temple Western Hills defaulted
on the loan, the FDIC foreclosed on the property securing the note. DAP subsequently purchased
the note and the personal guaranty and attempted to collect the deficiency sum. Cockrell died a
year and a half before the trial, leaving only Martin to testify regarding their transaction on May
31, 1989. 




DISCUSSION



 DAP alleges that the evidence is factually insufficient to support the jury's finding
that the Bank's officers defrauded Martin. The jury answered "yes" to the following question:


Did Texas American Bank officials commit fraud against Dell Martin in procuring
his signature on the personal guarantee without Dell Martin's knowledge of its true
meaning or contents nor the reasonable opportunity to obtain knowledge of its
character or its essential terms?



 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951);
see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). See generally William Powers,
Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev.
515 (1991). The jury is the sole judge of the credibility of witnesses and the weight to be given
to their testimony; a reviewing court cannot substitute its opinion for that of the trier of fact. 
Transmission Exch. Inc. v. Long, 821 S.W.2d 265, 271 (Tex. App.--Houston [1st Dist.] 1991, writ
denied). We may not reverse merely because we conclude the evidence preponderates toward a
particular answer; rather, reversal is warranted only when the great weight of the evidence
requires a particular answer. Dellana v. Walker, 866 S.W.2d 355, 359 (Tex. App.--Austin 1993,
writ denied). 

 Because Martin alleged that the Bank fraudulently secured the personal guaranty
as an affirmative defense to DAP's claim, Martin had the burden of proof at trial. Texaco, Inc.
v. Pennzoil, Co., 729 S.W.2d 768, 805 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e). 
The elements of fraud are: (1) that a material representation was made; (2) that the representation
was false; (3) that the speaker made it knowing it was false or made it recklessly without any
knowledge of the truth and as a positive assertion; (4) that the speaker made it with the intention
that it be acted upon by the party; (5) that the party acted in reliance upon it; (6) that the party
thereby suffered injury. Stone v. Lawyers Title Ins. Co., 554 S.W.2d 183, 185 (Tex. 1977). The
element at issue in Martin's case is whether a false material representation was made. The jury
charge and the evidence introduced at trial support two possible theories of fraud by the Bank: 
(1) Cockrell's silence constituted fraud because he owed Martin a duty to inform him that he was
signing a personal guarantee; or (2) Cockrell did not present the personal guaranty to Martin along
with the other documents on May 31, 1989.

 When the circumstances impose a duty to speak and a person deliberately remains
silent, silence is equivalent to a false representation. Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 435 (Tex. 1986); Chase Commercial Co. v. Datapoint Corp., 774 S.W.2d 359, 366
(Tex. App.--Dallas 1989, no writ). The existence of either a fiduciary or confidential relationship
imposes a duty upon one party to disclose material facts to the other. Stephanz v. Laird, 846
S.W.2d 895, 904 (Tex. App.--Houston [1st Dist.] 1993, writ denied). A confidential relationship
may arise not only from a technical fiduciary relationship but also from an informal relationship
in which one person trusts in and relies upon another, whether the relationship is social, domestic,
or purely personal. Page Airways Inc. v. Associated Radio Serv. Co., 545 S.W.2d 184, 193
(Tex. Civ. App.--San Antonio 1977, writ ref'd n.r.e.). The existence of a fiduciary or confidential
relationship is a question of fact. Id. at 192; Adickes v. Andreoli, 600 S.W.2d 939, 946 (Tex.
Civ. App.--Houston [1st Dist.] 1980, writ dism'd).

 Martin testified that he and Cockrell were friends, that they had transacted business
together before, and that Cockrell and other officers of the Bank knew that Martin never
personally guaranteed notes for Temple Western Hills. Based upon this relationship and
Cockrell's knowledge of Martin's adamant policy against personally securing notes, the evidence
supports the jury's finding of fraud. Although an on-going, arms-length business relationship
does not usually create a confidential relationship, see Thigpen v. Locke, 363 S.W.2d 247, 253
(Tex. 1963), the existence of a confidential relationship is a question for the trier of fact. Adickes,
600 S.W.2d at 946; Page Airways Inc., 545 S.W.2d at 192. Moreover, DAP failed to object to
the court's charge or request a definition of fraud or of confidential relationship. The failure to
object to the lack of definitions or explanatory instructions waives any error. Tex. R. Civ. P.
278; City of Austin v. Hoffman, 379 S.W.2d 103, 110 (Tex. Civ. App.--Austin 1964, writ dism'd
by agr.). 

 DAP argues that Martin would have discovered the existence of the guaranty if he
had read the documents. However, if the Bank owed Martin a duty to disclose the existence of
the personal guaranty, this fact will not defeat a finding of fraud. A person committing a fraud
cannot defeat the claim based on a plea that the party defrauded might have discovered the truth
by the exercise of proper care. Isenhower v. Bell, 365 S.W.2d 354, 357 (Tex. 1963).

 The jury's affirmative answer to the question of fraud could also be founded on its
belief that the Bank did not present Martin the guaranty on May 31, 1989, when he signed the
note and deed of trust. Concealment of a document may constitute fraud. See Deep Oil Dev. Co.
v. Cox, 224 S.W.2d 312, 318 (Tex. Civ. App.--Fort Worth 1949, writ ref'd n.r.e.); see also
Commercial Jewelry Co. v. Braczyk, 277 S.W. 754, 755 (Tex. Civ. App.--Waco 1925, no writ). 


 The evidence established that the date on the guaranty agreement was inconsistent
with the original date on the other two documents, suggesting that it was prepared later. Martin's
address on the guaranty was incorrect, and Martin testified that he would have changed the
mistake had he seen it. Although admitting that the signature on the document appeared to be his,
Martin testified that did not see the guaranty the day he signed the note and deed of trust. 
Martin's file did not contain a copy of the guaranty agreement. Although the bank had obtained
a copy of Martin's personal financial statement on March 31, 1989, it did not have a statement
dated May 31, 1989. 

 Because of Cockrell's death, Martin's testimony regarding his transaction with the
Bank is uncontroverted. DAP presented no evidence that the Bank regularly required personal
guaranties or that it would not have agreed to the transaction absent the guaranty. There is
sufficient evidence to support the jury's finding that Martin's signature was fraudulently procured
either by Cockrell's silence or by concealment of the document. Concluding that the jury's
finding of fraud is not so contrary to the evidence presented as to require a reversal, we overrule
DAP's point of error and affirm the judgment of the trial court.



 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: March 29, 1995

Do Not Publish

1. [1]  Evidence was introduced that Martin had personally guaranteed a note payable to NCNB
Texas Bank on August 4, 1989. Martin explained at trial that this personal guaranty was
temporary and not related to Temple Western Hills.